## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| **NOA HELMER**;<br>**DORIT HELMER,** *Individually and as Parent and Next Friend of* **L..H**., *a minor*,<br><br>Plaintiff,<br><br>~ *against* ~<br><br>**BOARD OF EDUCATION OF NILES TOWNSHIP HIGH SCHOOL, DISTRICT 219**;<br>**NILES NORTH HIGH SCHOOL**,<br><br>Defendants, | **Case No.:** __1:25-cv-13954__<br><br>**District Judge:** *to be assigned*<br><br>**Magistrate Judge:** *to be assigned*<br><br>**ORIGINAL COMPLAINT** |

    **COMES NOW** the Plaintiffs **NOA HELMER**, and **DORIT HELMER**, Individually and as the Parent and Next Friend of **L.H.**, a minor, with their Original Complaint against the Defendant **BOARD OF EDUCATION OF NILES TOWNSHIP HIGH SCHOOL, DISTRICT 219; NILES NORTH HIGH SCHOOL** does respectfully allege as follows:

### A.    NATURE OF THE CASE

    1.  Niles North retaliated against the Helmer family by making a false determination of non-residency, by demanding tuition backpay, and by otherwise discriminating against the Plaintiffs on the basis of their nationality, ethnicity, religion, and First Amendment advocacy.

    2.  In breach of their duty to provide the Plaintiffs due process, Defendants left no way for the Plaintiffs to challenge the Defendants' unlawful and unconstitutional retaliation.

    3.  Having left the Plaintiffs no other option, Plaintiffs respectfully submit this Original Complaint that seeks judicial intervention in the nature of a declaratory judgment in favor

of the Plaintiffs, voiding the determination of non-residency, injunctive relief as appropriate, and compensation for the damage to the Helmer family in an amount to be determined at trial and as more fully described below in this Original Complaint.

4.     In support of their claim, the Plaintiffs respectfully submit the following:

### C.     <u>JURISDICTION AND VENUE</u>

5.     This Honorable Court has subject matter jurisdiction over this case because it arises under the Constitution and laws of the United States, 28 U.S.C. § 1331.  This Court further has subject matter jurisdiction over this case because it is a civil action related to the deprivation of the Plaintiffs' Civil Rights, 28 U.S.C. § 1343.

6.     This Honorable Court has personal jurisdiction over the Defendants because they are resident at and maintain their headquarters, respectively, in the State of Illinois.

7.     This Honorable Court has supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367(a).

8.     Venue is proper in this District because a substantial part of the events giving rise to the claims occurred in this Judicial District and the Defendants are located in this District, 28 U.S.C. § 1391(b)(1) and (2).

9.     At no time have the Parties entered into any Settlement Agreement addressing or compromising on the claims described in this Original Complaint.

10.     The liability described in this lawsuit accrued before the expiration of any relevant Statute of Limitations.

11.     Any and all conditions precedent to the filing of this suit have been satisfied.

## C.      PARTIES

### i.      *Plaintiff Noa Helmer*

12.      Plaintiff, **NOA HELMER** is a natural person who resides at the County of Cook in the State of Illinois.   Noa Helmer are currently enrolled at Lake Forest College and they live at home with their parents.

13.      Where appropriate in this Original Complaint, Plaintiff Noa Helmer is referred to as Noa.

14.      Noa was born in Chicago, where she has lived all her life.  At all relevant times, she was and is a citizen of the United States.

15.      At all relevant times Noa was of Israeli heritage and did not identify as Arab.

16.      At all relevant times Noa was of Ashkenazi Jewish heritage.

17.      At all relevant times Noa was resident at Cook County in the State of Illinois.

18.      In or about August 2021, Noa resided with their parents at Devonshire neighborhood, in the County of Cook in the State of Illinois, which at all times was within the attendance boundaries of Niles North High School, a public secondary school operated by Niles Township High School District 219.

19.      On or about the Summer of 2021, Noa was registered as a student with Niles Township High School District 219, to commence the 2021-2022 academic year for Ninth Grade starting in August 2021, as a resident student of Niles Township High School District 219.

20.      On or about November 24, 2021, Noa's family home and all personal belongings were destroyed by fire, rendering the family displaced and without a fixed, regular, or

adequate nighttime residence within the meaning of 42 U.S.C. § 11434a(2) (the McKinney-Vento Homeless Assistance Act).

21.     Defendants had actual knowledge of Noa's homeless status as of November 24, 2021, because among other reasons Dorit Helmer notified the District residency office and Noa's teachers, advisers, counselors, case managers, principal, and all other relevant parties staff.

22.     The Defendants had actual and constructive knowledge of Noa's displacement.

23.     Following the destruction of her home in the fire, Noa and her family resided in hotels and other temporary accommodations for a short period, and on or about mid-December 2021 found temporary shelter in rental housing outside the geographic attendance boundaries of District 219 for the disruptive period while their home was rebuilt.

24.     By reason of the displacement caused by the fire, from at least November 24, 2021 through the end of 2023, Noa was a homeless child and youth as defined by 42 U.S.C. § 11434a(2)(A)–(B).

25.     Under the McKinney-Vento Homeless Assistance Act, and other applicable laws, statutes, and practices of the Defendants, Noa was entitled to remain registered in their school of origin, Niles North High School, and she was entitled to receive transportation and related educational stability protections under the McKinney-Vento Act and other relevant laws, statutes and practices of the Defendants.

26.     By reason of the displacement caused by the fire, from at least November 24, 2021 through the end of 2023, Noa was a homeless child and youth as defined by 105 ILCS 45/1-5 (Illinois Education for Homeless Children Act).

27.     Under the Illinois Education for Homeless Children Act, 105 ILCS 45/1-10 and other applicable laws, statutes, and practices of the Defendants, Noa was entitled to remain enrolled in their school of origin, Niles North High School so long as they remained homeless and until the end of the academic year in which housing is acquired, and in some cases the best interest presumption this extends through graduation.  In any event, Noa was a Junior in 2023 and the Defendants were required to maintain her registration through graduation.

28.     Throughout the 2021-2022, 2022-2023, and into the 2023-2024 academic school years, Noa remained registered at Niles North High School as provided under the relevant statutes and with the Defendants' full awareness of the family's displacement and continued homeless status as their home was rebuilt.

29.     In June 2023, while Noa remained in temporary accommodations, Noa was re-registered at Niles North for the 2023-2024 academic year for Eleventh Grade.

30.     At all relevant times, Noa's center of family and social life was in the district area including but not limited to her social peer group being from the district and attending Niles North, her participation in the Varsity Cheer Team of Niles North, her participation in the Symphonic Winds Ensemble, Israeli club, Hebrew Honor Society at Niles North.  The synagogues that she did and does attend are in the district.

31.     On or about November 13, 2023, Defendants unlawfully issued Noa's parents a Notice of Residency Violation that asserted Noa was no longer entitled to attend Niles North High School.

32.     On or about November 13, 2023, Defendants called Noa down to the Dean's Office, and told Noa that she is prohibited from attending classes and all programs at Niles North High School and would need to call her parents to pick her up.  The Dean also called down her

coach on the Cheer Varsity Team to advise Noa, that she would be removed from the Team immediately.

33. On or about November 21, 2023, Defendants forcibly officially withdrew Noa from Niles North High School and prohibited Noa from attending classes or participating in athletics, notwithstanding their continuing homeless status under federal law, as retaliation against the mother of Noa and in a discriminatory fashion.

34. On or about December 7, 2023, New Trier High School (outside of District 219, and Noa's s school of origin) registered Noa. Given the ill-timing of the registration (a week before final exams for the semester) Noa was required to drop her Advanced Placement classes and lost nearly all semester credits for the Autumn 2023 semester.

35. As a direct and proximate cause of the damage done by the Defendants, Noa withdrew from High School in May 2024.

36. On or about August 2025, Noa began college at Lake Forest College and currently resides at the Northbrook neighborhood in the County of Cook in the State of Illinois.

37. As a direct and proximate consequence of the actions of the Defendants, Noa suffered:

    (i.) Academic detriment, including a change in her academic trajectory from a 4.0 GPA, Advanced Placement student to dropping out and ultimately attending a College that she would not have attended had the Defendants not wrongly disenrolled her;

    (ii.) Graduation distinctions and participation, including but not limited to National Honor Society, Hebrew Honor Society, Loyola University Hebrew dual-credit program, Academic accolades, Advanced Placement classes and credits, Academic merit scholarships, Marching band and Symphonic Winds Ensemble, Senior class and sports traditions and events, Senior Prom, and Graduation;

    (iii.) Foreseeable emotional and social harm;

    (iv.) Terminated high school competitive athletics participation;

(v.)  Financial costs

(vi.)  Unfair treatment on account of ethnicity, nationality, perceived ethnicity, perceived nationality, and first amendment advocacy.

## ii.  *Plaintiff L.H.*

38.  Plaintiff, L.H. is a minor and a natural person who resides with their parents is a natural person who resides at Northbrook the County of Cook in the State of Illinois.

39.  L.H. is referred to in this Original Complaint under a pseudonym, but their true name is known to the Defendants.  They proceed in this action through their next friend, who is their mother Dorit Helmer.  Upon Judge Assignment, the Plaintiffs intend to move for leave to proceed under pseudonym to the extent required.

40.  L.H. was born in Chicago, where she has lived all his life.  At all relevant times, he was and is a citizen of the United States.

41.  At all relevant times L.H. was of Israeli heritage and did not identify as Arab.

42.  At all relevant times L.H. was of Ashkenazi Jewish heritage.

43.  At all relevant times L.H. was resident at Cook County in the State of Illinois.

44.  On or about August 2021, L.H. resided with their parents at Devonshire neighborhood, in the County of Cook in the State of Illinois, which at all times was within the attendance boundaries of Niles North High School, a public secondary school operated by Niles Township High School District 219.

45.  On or about the Summer of 2021, L.H. was registered as a student with Old Orchard Junior High School District 68 (the primary feeder school into Niles North High School), to commence the 2021-2022 academic year for Eighth Grade starting in August 2021.

46.     On or about October 2021, L.H. was registered as a student with Niles Township High School District 219, to commence the 2022-2023 academic year for Ninth Grade starting in August 2022, as a resident student of Niles Township High School District 219.

47.     On or about November 24, 2021, L.H.'s family home and all personal belongings were destroyed by fire, rendering the family displaced and without a fixed, regular, or adequate nighttime residence within the meaning of 42 U.S.C. § 11434a(2) (the McKinney-Vento Homeless Assistance Act).

48.     Defendants had actual knowledge of L.H.'s homeless status as of November 24, 2021, because among other reasons because among other reasons Dorit Helmer notified the District residency office and L.H.'s teachers, advisers, counselors, case managers, principal, and all other relevant parties staff, and the Defendants knew that L.H. and Noa were siblings and were both in the same homeless child and youth status.

49.     The Defendants had actual and constructive knowledge of L.H.'s displacement.

50.     Following the destruction of his home in the fire, L.H. and his family resided in hotels and other temporary accommodations for a short period, and on or about mid-December 2021 found temporary shelter in rental housing outside the geographic attendance boundaries of District 219 for the disruptive period while their home was rebuilt.

51.     By reason of the displacement caused by the fire, from at least November 24, 2021 through the end of 2023, L.H. was a homeless child and youth as defined by 42 U.S.C. § 11434a(2)(A)–(B).

52.     By reason of the displacement caused by the fire, from at least November 24, 2021 through the end of 2023, L.H. was a homeless child and youth as defined by 105 ILCS 45/1-5 (Illinois Education for Homeless Children Act).

53.      Under the Illinois Education for Homeless Children Act, 105 ILCS 45/1-10 and other applicable laws, statutes, and practices of the Defendants, L.H. was entitled to remain enrolled in their school of origin, Niles North High School so long as they remained homeless and until the end of the academic year in which housing is acquired, and in some cases the best interest presumption this extends through graduation.  In any event, L.H. was a Sophomore in 2023 and the Defendants were required to maintain his registration through graduation.

54.     Throughout the 2022-2023, and into the 2023-2024 academic school years, L.H. remained registered  at Niles North High School as provided under the relevant statutes and with the Defendants' full awareness of the family's displacement and continued homeless status as their home was rebuilt.

55.     In June 2023, while L.H. remained in temporary accommodations, L.H. was re-registered at Niles North for the 2023-2024 academic year for Tenth Grade.

56.     At all relevant times, L.H.'s center of family and social life was in the district area, including but not limited to his social peer group, being from the district and attending Niles North, his participation in Varsity Cheer, Football, and Gymnastics teams.  L.H. drove and drives to the district area on a nearly daily basis to meet with friends, and for religious and youth group meetings.  The synagogues that he attends are in the district area.

57.     On or about November 13, 2023, Defendants unlawfully issued L.H.'s parents a Notice of Residency Violation that asserted L.H. was no longer entitled to attend Niles North High School.

58.     On or about November 13, 2023, Defendants called L.H. down to the Dean's Office, and told L.H. he is prohibited from attending classes and all programs at Niles North High School and that he would need to call his parents to pick him up. The Dean also called down his coach on the Cheer Varsity Team to advise them that he would be removed from the Team immediately.

59.     On or about November 21, 2023, Defendants forcibly officially withdrew L.H. from Niles North High School and prohibited L.H. from attending classes or participating in athletics, notwithstanding their continuing homeless status under federal law, as retaliation against the mother of L.H. and in a discriminatory fashion.

60.     On or about December 7, 2023, New Trier High School (outside of District 219, and L.H.'s school of origin) registered L.H. Given the ill-timing of the registration (a week before final exams for the semester) L.H. lost nearly all semester credits for the Autumn 2023 semester.

61.     As a direct and proximate cause of the damage done by the Defendants, L.H. withdrew from High School in May 2024.

62.     As a direct and proximate consequence of the actions of the Defendants, L.H. suffered:

(i.)    Academic detriment, including a change in his academic trajectory from a sincere student to dropping out had the Defendants not wrongly disenrolled him;

(ii.)   Graduation distinctions and participation;

(iii.)  Foreseeable emotional and social harm;

(iv.)   Terminated high school competitive athletics participation;

(v.)    Financial costs

(vi.)   Unfair treatment on account of ethnicity, nationality, perceived ethnicity, perceived nationality, and first amendment advocacy.

### iii.    *Plaintiff Dorit Helmer*

63.    Plaintiff Dorit Helmer is a natural person and the mother of Plaintiffs Noa and L.H.  Together with her husband who is the mother of their children, they reside at the County of Cook in the State of Illinois.

64.    Where appropriate in this Original Complaint, Plaintiff Dorit Helmer is referred to as Dorit.

65.    Dorit was born in Chicago and has lived in Chicago since she was of 10 years of age.  She attended Niles North for High School.  At all relevant times, she was and is a citizen of the United States.

66.    At all relevant times Dorit was an Israeli citizen and of Israeli heritage.

67.    At all relevant times Dorit was of Ashkenazi Jewish heritage.

68.    At all relevant times Dorit was resident at Cook County in the State of Illinois.

69.    In or about August 2021, Dorit resided with their children at the Devonshire neighborhood, in the County of Cook in the State of Illinois, which at all times was within the attendance boundaries of Niles North High School, a public secondary school operated by Niles Township High School District 219.

70.    Dorit registered Noa in Niles Township High School District 219 on or about June 2021, for her to commence the 2021-2022 academic year for Ninth Grade.

71.    Dorit registered L.H. in Niles Township High School District 219 on or about October 2021, for him to commence the 2022-2023 academic Ninth Grade.

72.     On or about November 24, 2021, Dorit's home and all personal belongings were destroyed by fire, rendering her and her family displaced and without a fixed, regular, or adequate nighttime residence within the meaning of 42 U.S.C. § 11434a(2) (the McKinney-Vento Homeless Assistance Act).

73.     Defendants had actual knowledge of the Helmer family's homeless status as of November 24, 2021, because among other reasons Dorit Helmer notified the District residency office and Noa's and L.H.'s teachers, advisers, counselors, case managers, principal, and all other relevant parties staff.

74.     The Defendants had actual and constructive knowledge that Dorit's children had been displaced.

75.     Following the destruction of her home in the fire, Dorit and her children resided in hotels and other temporary accommodations for a short period, and on or about mid-December 2021 found temporary shelter in rental housing outside the geographic attendance boundaries of District 219 for the disruptive period while their home was rebuilt.

76.     Under the McKinney-Vento Homeless Assistance Act, and other applicable laws, statutes, and practices of the Defendants, Dorit was entitled to have her children remain registered in their school of origin, Niles North High School, and her children were entitled to receive transportation and related educational stability protections under the McKinney-Vento Act and other relevant laws, statutes and practices of the Defendants.

77.     By reason of the displacement caused by the fire, from at least November 24, 2021 through the end of 2023, Dorit's children were each a homeless child and youth as defined by 105 ILCS 45/1-5 (Illinois Education for Homeless Children Act).

78.     Under the Illinois Education for Homeless Children Act, 105 ILCS 45/1-10 and other applicable laws, statutes, and practices of the Defendants, Dorit's children were entitled to remain enrolled in their school of origin, Niles North High School so long as they remained homeless and until the end of the academic year in which housing is acquired, and in some cases the best interest presumption this extends through graduation.  In any event, Noa was a Junior in 2023 and the Defendants were required to maintain her registration through graduation.

79.     Throughout the 2021-2022, 2022-2023, and into the 2023-2024 school years, Dorit's children remained properly enrolled at Niles North High School as provided under the relevant statutes and with the Defendants' full awareness of the family's displacement and continued homeless status as their home was rebuilt.

80.     In June 2023 while Dorit and her children remained in temporary accommodations, Dorit's children were re-enrolled at Niles North for the 2023-2024 academic year for Tenth Grade and Eleventh Grade, respectively.

81.     Dorit and her family's center of life has always been in the District.  Dorit grew up in the District.  The synagogues that Dorit and her family still attend today are in the district area.  Dorit's friends and extended family live in the district. The majority of Dorit's family's life-long friends live in the district area.  Dorit was and still is a very active, involved, and contributing community member in the district area.  In May of 2021, Dorit's parents moved to live just a few blocks away from Plaintiffs' Skokie residence in order to be closer to the family and help with the children while Dorit was at work.  The Defendants' actions caused great harm to Plaintiff family as it pulled the Plaintiffs and their family away from their extended family, friends, and life-long community.

82. On or about November 13, 2023, Defendants unlawfully issued Dorit a Notice of Residency Violation that asserted Dorit's children were no longer entitled to attend Niles North High School.

83. On or about November 21, 2023, Defendants forcibly withdrew Dorit's children from Niles North High School and permanently prohibited Dorit's children from attending classes or participating in athletics, notwithstanding their continuing homeless status under federal law, as retaliation against the mother of Dorit's, and in a discriminatory fashion.

### iv. *Defendant Board of Education of Niles Township High School, District 219 and Niles North High School*

84. At all times relevant to this Original Complaint, Defendant **BOARD OF EDUCATION OF NILES TOWNSHIP HIGH SCHOOL, DISTRICT 219** and Defendant **NILES NORTH HIGH SCHOOL** were responsible for the de-registration of the Helmer family, and the torts described in this Complaint.

*[Remainder of Page Intentionally Left Blank]*

## FACTUAL BACKGROUNDS

i.   ***The Wrongful De-Registration of the Helmer Family***

85.   As described above, the Defendants wrongly de-registered the Helmer family.

ii.   ***Defendants' Treatment of the Plaintiffs***
     ***was Retaliation for the***
     ***Plaintiffs' First Amendment Protected Activity***

86.   As described above, the Defendants wrongly de-registered the Helmer family and caused financial and other irreversible damage to Noa, L.H., and Dorit in retaliation for Plaintiff Dorit Helmer's First Amendment advocacy.

87.   By way of background:

88.   In October 2023, Arab Palestine launched an aggressive military campaign abroad (hereinafter "Toufan al-Aqsa" or the "war").

89.   Toufan al-Aqsa, which remains ongoing, relied heavily on overseas support to achieve its tactical and strategic goals. This support included the government-coordinated pro-war campaign by the staff, administration and some of the students at Niles North.

90.   Acting in the name of and on behalf of self-described "civil society" overseas in Arab Palestine,[1] staff, administration at Niles North, acting together with some students, participated fully in Toufan Al-Aqsa through a campaign of ethnic intimidation, religious hate and physical violence against those who dissented from (or who were otherwise perceived to be enemies of) their government.

---

[1] Which is de facto government of Arab Palestine, referred to here as the "government".

91.     This campaign disproportionately impacted those with heritage or nationality ties to Palestine or its neighbors and who do not identify as "Arab"; those of Ashkenazi Jewish ancestry, and those who have political, religious, ethical objections to or who otherwise dissent from the Arab nationalist political project as defined by the government.  In this Original Complaint, those in these classes are referred to generally as the "dissenters", and who were singled out because of their actual race, color, nationality, and religion.

92.     Without limitation to other examples, on October 10, 2023, the Helmer children became aware of a military procession organized at Niles North by the government-linked Student for Justice in Palestine ("SJP") organization, and its allied groups ("the pro-war military procession").

93.     The pro-war military procession was organized in coordination with the de facto government of Arab Palestine ("government") to further government policy and promote its war aims through ethnic intimidation, religious hate, and physical violence against those who dissented at Niles North from the military policy of Arab Palestine.[2]

94.     The military procession kicked off the government's ongoing pro-war campaign at Niles North throughout the 2023-2024 academic school year, as more fully described below.

95.     With the endorsement and strong encouragement of the Defendants, the staff, administration and some of the students at North Niles used their control over their students (and classmates) to promote government policy through physical intimidation, ethnic hostility, and religious hate against dissenters.

---

[2]     *See* DAY OF RESISTANCE TOOLKIT (National Students for Justice in Palestine Oct. 7, 2023) that coordinated the government's National Day of [Muqawama] on October 12, 2023, including the Niles North Military Procession. Available online at https://www.investigativeproject.org/documents/1179/sjp-day-of-resistance-toolkit.pdf.

96.     Concerned for her children's safety and for the treatment of students who were disproportionately impacted by their dissent from government policy, Dorit contacted Niles North administrators in October 2023 for clarification and security assurances.

97.     The school administration brooked no dissent from government policy and adamantly refused to respond to Dorit or to otherwise ensure the safety, or otherwise provide support to dissenters

98.     On or about mid-October, Dorit contacted Superintendent Dr. Thomas Moore directly to raise her concerns about physical intimidation, ethnic hostility, and religious hate by staff, administrators and students against those who dissented from government policy. She reported to him how the government and its supporters had created an atmosphere of discrimination, fear, and bigotry against dissenters at Niles North and Niles West.

99.     Over the following weeks, Dorit and Dr. Moore communicated multiple times regarding the District's handling of the physical intimidation, ethnic hostility, and religious hate by the government and its supporters against those who dissented from government policy or who otherwise opposed Toufan al-Aqsa.

100.    On or about mid-October 2023, Dr. Moore personally asked Dorit to act as his informal "liaison" to the parent community to help manage the growing volume of complaints concerned about the impact of government policy on their children.

101.    Dorit agreed to assist and acted in good faith to facilitate communication between the District and concerned parents.

102.    Despite her cooperation, both Niles North and Niles West High Schools enabled and promoted physical intimidation, ethnic hostility, and religious hate against dissenters.

103. Through 2023-2024, Dorit began to attend Village and Board of Education meetings to speak publicly about the District's inadequate response to discrimination against dissenters, and the campaign of physical intimidation, ethnic hostility, and religious hate against dissenters by the government and its supporters.

104. She also communicated with affected teachers and parents and advocated for the District to take corrective action and protect dissenting students and teachers from targeted hostility by the government, its supporters, pro-war advocates, and other participants in Toufan al-Aqsa.

105. On or about November 9, 2023, an attorney representing affected families sent a formal letter to the District and Board outlining how the policies and values of their government promoted by the District, the Board, the Schools, its administrators, its staff and some of its students, were in violation of students' rights under United States and Illinois law.

106. Dorit was courtesy copied on that legal letter, which put the District on formal notice of her association with First Amendment-protected advocacy.

107. Just four days later, on or about November 13, 2023, District 219 issued Dorit and her husband the Notice of Non-Residency described above.

108. Dorit sought assistance from New Trier High School, which agreed to enroll her children on December 7, 2023, approximately one week before final examinations.

109. When Dorit requested her children's transcripts and grades, Niles North personnel delayed and obstructed the process, making it difficult to complete the transfer.

110. New Trier's principal personally contacted District 219 to request permission for Dorit's children to complete the semester so they could transfer with proper credit, but the District refused.

111.    New Trier's principal later informed Dorit that District 219 appeared unusually hostile toward her family, though he could not explain why.

112.    Because the children joined New Trier so late in the semester, they were denied credit for most of their fall coursework.

113.    The District never provided any legitimate or factual explanation for its sudden change in residency determination.

114.    The proximity in time between Dorit's public advocacy for students, her communications with Dr. Moore, and the issuance of the residency violation establishes a clear causal connection.

115.    Upon information and belief, the Defendants' actions were taken in retaliation for Dorit's exercise of her First Amendment rights to speak on matters of public concern and to petition school officials regarding discrimination.

116.    The Defendants' conduct further reflected discrimination and hostility on the basis of Dorit's and her children's religion, heritage, and protected advocacy.

117.    As a direct and proximate result of the Defendants' retaliatory conduct, Dorit and her family suffered significant educational, emotional, and financial harm.

### AS AND FOR THE FIRST CAUSE OF ACTION
(§ 1983 Action to Enforce McKinney-Vento Rights)
(Plaintiffs against Board of Education Of Niles Township High School, District 219;
Niles North High School)

118.     Each of the foregoing paragraphs is repeated, realleged and incorporated by reference as if set forth fully here.

119.    From November 2021, through their un-enrollment, Noa and L.H. were "homeless" as defined in the statute.

120.    Defendants refused to allow Noa and L.H. to remain enrolled through the school year, did not provide transportation, and did not offer dispute resolution.

121.    These acts deprived the Plaintiffs of their rights under color of law.

122.    The Defendants' failure to provide the Plaintiffs their rights under the McKinney-Vento Act, caused damage to Noa that included, but was not limited to:

(i.)    Academic detriment, including a change in her academic trajectory from a 4.0 GPA, Advanced Placement student to dropping out and ultimately attending a College that she would not have attended had the Defendants not wrongly disenrolled her;

(ii.)   Graduation distinctions and participation, including but not limited to National Honor Society, Hebrew Honor Society, Loyola University Hebrew dual-credit program, Academic accolades, Advanced Placement classes and credits, Academic merit scholarships, Marching band and Symphonic Winds Ensemble, Senior class and sports traditions and events, Senior Prom, and Graduation;

(iii.)  Foreseeable emotional and social harm;

(iv.)   Terminated high school competitive athletics participation;

(v.)    Financial costs; *and*

(vi.)   Unfair treatment on account of ethnicity, nationality, perceived ethnicity, perceived nationality, and first amendment advocacy.

123.    The Defendants' failure to provide the Plaintiffs their rights under the McKinney-Vento Act, caused damage to L.H. that included, but was not limited to:

(i.)    Academic detriment, including a change in his academic trajectory from a sincere student to dropping out had the Defendants not wrongly disenrolled her;

(ii.)   Graduation distinctions and participation;

(iii.)  Foreseeable emotional and social harm;

(iv.)   Terminated high school competitive athletics participation;

(v.)    Financial costs

(vi.)   Unfair treatment on account of ethnicity, nationality, perceived ethnicity, perceived nationality, and first amendment advocacy.

124.    The Defendants' failure to provide the Plaintiffs their rights under the McKinney-Vento Act, caused damage to Dorit that included, but was not limited to:

(i.)    Academic detriment of their children, including changing their academic trajectory, their ability to complete high school in person, the choice of college/university and other related impacts;

(ii.)   Graduation distinctions and participation for their children;

(iii.)  Foreseeable emotional and social harm;

(iv.)   Terminated high school competitive athletics participation by their children;

(v.)    Financial costs; *and*

(vi.)   Unfair treatment on account of ethnicity, nationality, perceived ethnicity, perceived nationality, and first amendment advocacy.

125.    Where appropriate in this Original Complaint, references to activity that "resulted in damages" is to the damages described above, the un-enrollment, and other damages.

## AS AND FOR THE SECOND CAUSE OF ACTION
(Illinois Education for Homeless Children Act, 105 ILCS 45)
(Plaintiffs against Board of Education Of Niles Township High School, District 219;
Niles North High School)

126.    Each of the foregoing paragraphs is repeated, realleged and incorporated by reference as if set forth fully here.

127.    From November 2021, through their un-enrollment, Noa and L.H. were "homeless" as defined in the statute.

128.    Defendants refused to allow Noa and L.H. to remain enrolled through the 2023-2024 school year, did not provide transportation, and did not offer dispute resolution.

129.    These acts deprived the Plaintiffs of their rights under color of law.

130.    The Defendants' failure to provide the Plaintiffs with their rights directly and proximately resulted in damage to the Plaintiffs.

## AS AND FOR THE THIRD CAUSE OF ACTION
(Title VI – Hostile Educational Environment)
(Plaintiffs against Board of Education Of Niles Township High School, District 219;
Niles North High School)

131.    Each of the foregoing paragraphs is repeated, realleged and incorporated by reference as if set forth fully here.

132.    Defendants excluded the Plaintiffs from the benefits of school, denied Plaintiffs' enrollment, and subjected the Plaintiffs to severe pervasive and objectively offensive harassment because of the Plaintiffs' heritage and nationality ties to Palestine and its neighbors, while not identifying as "Arab", their Ashkenazi Jewish ethnic ancestry, and because of their religious objections to and dissent from the Arab nationalist political project.

133.    Defendants had actual knowledge of the pervasive and objectively offensive harassment.

134.    Defendants fully supported the government, and in support of that government and in furtherance of the strategic and military goals of Toufan al-Aqsa were deliberately indifferent to the damage caused to the Plaintiffs, thereby denying the Plaintiffs educational opportunities.

135.    Defendants' adoption of government policy had a disparate impact on the Plaintiffs, on the basis of the Plaintiffs' heritage and nationality ties to Palestine and its neighbors, while not identifying as "Arab", their Ashkenazi Jewish ethnic ancestry, and because of their religious objections to and dissent from the Arab nationalist political project.

136.    The Defendants' failure to provide the Plaintiffs with their rights directly and proximately resulted in damage to the Plaintiffs.

## AS AND FOR THE FOURTH CAUSE OF ACTION
(Illinois Civil Rights Act of 2003 (ICRA), 740 ILCS 23/5)
(Plaintiffs against Board of Education Of Niles Township High School, District 219;
Niles North High School)

137.     Each of the foregoing paragraphs is repeated, realleged and incorporated by reference as if set forth fully here.

138.     Defendants excluded the Plaintiffs from the benefits of school, denied Plaintiffs enrollment, and subjected the Plaintiffs to discrimination based on the Plaintiffs' heritage and nationality ties to Palestine and its neighbors, while not identifying as "Arab", their Ashkenazi Jewish ethnic ancestry, and because of their religious objections to and dissent from the Arab nationalist political project.

139.     Defendants' adoption of government policy had a disparate impact on the Plaintiffs, on the basis of the Plaintiffs' heritage and nationality ties to Palestine and its neighbors, while not identifying as "Arab", their Ashkenazi Jewish ethnic ancestry, and because of their religious objections to and dissent from the Arab nationalist political project.

140.     The Defendants' failure to provide the Plaintiffs with their rights directly and proximately resulted in damage to the Plaintiffs.

## AS AND FOR THE FIFTH CAUSE OF ACTION
(§ 1983 Procedural Due Process)
(Plaintiffs against Board of Education Of Niles Township High School, District 219;
Niles North High School)

141.     Each of the foregoing paragraphs is repeated, realleged and incorporated by reference as if set forth fully here.

142.     Plaintiffs had a protected interest in their enrollment at Niles North.

143.     Defendants deprived the Plaintiffs of enrollment at Niles North.

144.     Defendants provided no notice and opportunity to be heard before un-enrolling the Plaintiffs.

145.     There was a causal link between the Defendants' denial of procedural due process resulted in damages to the Plaintiffs.

146.     The Defendants' failure to provide the Plaintiffs their rights directly and proximately resulted in damage to the Plaintiffs.


## AS AND FOR THE SIXTH CAUSE OF ACTION
(§ 1983 Equal Protection)
(Plaintiffs against Board of Education Of Niles Township High School, District 219;
Niles North High School)

147.     Each of the foregoing paragraphs is repeated, realleged and incorporated by reference as if set forth fully here.

148.     Plaintiffs were treated differently because of their heritage and nationality ties to Palestine and its neighbors, while not identifying as "Arab", their Ashkenazi Jewish ethnic ancestry, and because of their religious objections to and dissent from the Arab nationalist political project.

149.     Defendants' staff, administrators (and students acting with the encouragement of the Defendants) acted at the direction of and consistent with the policies of the government.  The policies of the government are to intentionally discriminate against those with heritage and nationality ties to Palestine and its neighbors, while not identifying as "Arab"; those who have Ashkenazi Jewish heritage; and those who have religious objections or who otherwise dissent from the Arab nationalist political project as defined by the government

150.     Defendants otherwise acted with discriminatory intent.

151.   Defendants acted under color of state law.

152.   The Defendants' failure to provide the Plaintiffs their rights directly and proximately resulted in damage to the Plaintiffs.


## AS AND FOR THE SEVENTH CAUSE OF ACTION
(Title VI Retaliation)
(Plaintiffs against Board of Education Of Niles Township High School, District 219;
Niles North High School)


153.   Each of the foregoing paragraphs is repeated, realleged and incorporated by reference as if set forth fully here.

154.   Plaintiffs engaged in protected activity.

155.   The school engaged in an adverse action against Plaintiffs by un-enrolling them.

156.   The Defendants' retaliation against the Plaintiffs proximately resulted in damage to the Plaintiffs.


## AS AND FOR THE EIGHTH CAUSE OF ACTION
(Title VI Intentional Discrimination)
(Plaintiffs against Board of Education Of Niles Township High School, District 219;
Niles North High School)


157.   Each of the foregoing paragraphs is repeated, realleged and incorporated by reference as if set forth fully here.

158.   Plaintiffs were subject to discrimination because of their heritage and nationality ties to Palestine and its neighbors, while not identifying as "Arab", their Ashkenazi

Jewish ethnic ancestry, and because of their religious objections to and dissent from the Arab nationalist political project.

159.    Defendants receive federal funding.

160.    Defendants' staff, administrators (and students acting with the encouragement of the Defendants) acted at the direction of and consistent with the policies of the government. The policies of the government are to intentionally discriminate against those with heritage and nationality ties to Palestine and its neighbors, while not identifying as "Arab"; those who have Ashkenazi Jewish heritage; and those who have religious objections or who otherwise dissent from the Arab nationalist political project as defined by the government.

161.    Defendants otherwise acted with discriminatory intent.

162.    The Defendants' intentional discrimination against the Plaintiffs their rights directly and proximately resulted in damage to the Plaintiffs.

*[Remainder of Page Intentionally Let Blank]*

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully prays for Judgment as follows:

A.    A Declaratory Judgment that the Defendants had discriminated against the Plaintiffs and wrongly un-enrolled them from Niles North;

B.    A Permanent Injunction that enjoins Defendants, their agents and employees, and all persons acting in concert or participation with Defendants, from depriving the Plaintiffs and those similarly situated of their rights;

C.    A Permanent Injunction that enjoins the Defendants, their agents and employees from adopting government policy to the extent such policies intentionally discriminate or have a disparate impact on those with heritage and nationality ties to Palestine and its neighbors, while not identifying as "Arab"; those who have Ashkenazi Jewish heritage; and those who have religious objections or who otherwise dissent from the Arab nationalist political project as defined by the government

D.    Compensatory damages in an amount to be proven at trial;

E.    Awarding Plaintiff's legal fees as provided under the relevant statutes and Illinois law;

F.    Providing Legal and Equitable Relief to which the Plaintiff is entitled; *and*

G.    Awarding Plaintiff such other relief as this Court may deem just and proper under the circumstances.

## **PLAINTIFF RESPECTFULLY DEMANDS TRIAL BY JURY FOR THOSE ISSUES THAT ARE TRIABLE**

Dated: **November 13, 2025**

Respectfully Submitted,

Baruch S. Gottesman, Esq.
GOTTESMAN LEGAL PLLC
11 Broadway, Suite 615
New York, NY 10004
bg@gottesmanlegal.com
*Counsel for the Plaintiff*