# THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

**NOA HELMER**;
**DORIT HELMER,** *Individually and as Parent and Next Friend of* **L..H**.*, a minor*,

        Plaintiff,

    *~ against ~*

**BOARD OF EDUCATION OF NILES TOWNSHIP HIGH SCHOOL, DISTRICT 219**,

        Defendant,

**Case No.:**  **1:25-cv-13954**

**District Judge:** Georgia N. Alexakis

**Magistrate Judge:** Beth Jantz

**FIRST AMENDED COMPLAINT**

    **COMES NOW** the Plaintiffs **NOA HELMER**, and **DORIT HELMER**, Individually and as the Parent and Next Friend of **L.H.**, a minor, with their First Amended Complaint against the Defendant **BOARD OF EDUCATION OF NILES TOWNSHIP HIGH SCHOOL, DISTRICT 219** and in support do respectfully allege as follows:

### A.    NATURE OF THE CASE

1.    Niles North retaliated against the Helmer family by making a false determination of non-residency, by demanding tuition backpay, and by otherwise discriminating against the Plaintiffs on the basis of their nationality, ethnicity, religion, and First Amendment advocacy.

2.    In breach of their duty to provide the Plaintiffs due process, Defendant provided no practical method for the Plaintiffs to challenge the Defendant's unlawful and unconstitutional retaliation was available, and if available, would have been futile.  In the alternative, administrative procedures were exhausted.

3.  Having left the Plaintiffs no other option, Plaintiffs respectfully submit this First Amended Complaint that seeks judicial intervention in the nature of a declaratory judgment in favor of the Plaintiffs, voiding the determination of non-residency, injunctive relief as appropriate, and compensation for the damage to the Helmer family in an amount to be determined at trial and as more fully described below in this First Amended Complaint.

| | Deleted: Original |
|---|---|

4.  Annexed as Exhibit A is a "trackchanges" version showing changes between the Original Complaint and this First Amended Complaint.

5.  In support of their claim, the Plaintiffs respectfully submit the following:

### C.  JURISDICTION AND VENUE

6.  This Honorable Court has subject matter jurisdiction over this case because it arises under the Constitution and laws of the United States, 28 U.S.C. § 1331.  This Court further has subject matter jurisdiction over this case because it is a civil action related to the deprivation of the Plaintiffs' Civil Rights, 28 U.S.C. § 1343.

7.  This Honorable Court has personal jurisdiction over the Defendant because they are resident at the State of Illinois.

| | Deleted: s |
|---|---|
| | Deleted:  and maintain their headquarters, respectively, in |

8.  This Honorable Court has supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1367(a).

| | Deleted: ' |
|---|---|

9.  Venue is proper in this District because a substantial part of the events giving rise to the claims occurred in this Judicial District and the Defendant is located at this District, 28 U.S.C. § 1391(b)(1) and (2).

| | Deleted: s are |
|---|---|
| | Deleted: in |

10.  At no time have the Parties entered into any Settlement Agreement addressing or compromising on the claims described in this First Amended Complaint.

| | Deleted: Original |
|---|---|

11. The liability described in this lawsuit accrued before the expiration of any relevant Statute of Limitations.

12. Any and all conditions precedent to the filing of this suit have been satisfied, and any administrative remedies were unavailable, and if available, would have been futile. In the alternative, administrative procedures were exhausted.

### C. PARTIES

#### i. *Plaintiff Noa Helmer*

13. Plaintiff, **NOA HELMER** is a natural person who resides at the County of Cook in the State of Illinois. Noa Helmer are currently enrolled at Lake Forest College and they live at home with their parents.

14. Where appropriate in this First Amended Complaint, Plaintiff Noa Helmer is referred to as Noa.

15. Noa was born in Chicago, where she has lived all her life. At all relevant times, she was and is a citizen of the United States.

16. At all relevant times Noa was of Israeli heritage and did not identify as Arab.

17. At all relevant times Noa was of Ashkenazi Jewish heritage.

18. At all relevant times Noa was resident at Cook County in the State of Illinois.

19. In or about August 2021, Noa resided with their parents at Devonshire neighborhood, in the County of Cook in the State of Illinois, which at all times was within the attendance boundaries of Niles North High School, a public secondary school operated by Niles Township High School District 219.

**Formatted:** Font: Not Bold, Not Italic, Complex Script Font: Not Bold, Not Italic

**Deleted:** .

**Formatted:** Underline

**Deleted:** Original

20. On or about the Summer of 2021, Noa was registered as a student with Niles Township High School District 219, to commence the 2021-2022 academic year for Ninth Grade starting in August 2021, as a resident student of Niles Township High School District 219.

21. On or about November 24, 2021, Noa's family home and all personal belongings were destroyed by fire, rendering the family displaced and without a fixed, regular, or adequate nighttime residence within the meaning of 42 U.S.C. § 11434a(2) (the McKinney-Vento Homeless Assistance Act).

22. The unfortunate timing of the fire, which occurred on Thanksgiving eve, made it nearly impossible to find accommodations. For the first four (4) days following the fire, there was no hotel in the entire area of Skokie and surrounding communities that had two rooms available. The Plaintiffs' family therefore had to split up during an extremely sensitive and difficult time.

23. The Defendant had actual knowledge of Noa's homeless status as of November 24, 2021, because among other reasons Dorit Helmer notified the District residency office and Noa's teachers, advisers, counselors, case managers, principal, and all other relevant parties staff.

24. The Defendant had actual and constructive knowledge of Noa's displacement.

25. Following the destruction of her home in the fire, Noa and her family resided in hotels and other temporary accommodations for a short period, and on or about mid-December 2021 found temporary shelter in rental housing outside the geographic attendance boundaries of District 219 for the disruptive period while their home was rebuilt.

26. The temporary shelter during the disruptive period was not a fixed, regular and adequate residence within the meaning of 42, U.S.C. § 11434a(2)(A)-(B).

27. The actual conditions of the temporary rental were finalized on an emergency basis. The insurance company and relocation services were only able to offer temporary housing in Eligin or Itasca, which were entirely inappropriate.

28. Instead, the Plaintiffs called on a friend who was in the process of selling their home. The Plaintiffs and their friend agreed to a month-to-month rental that could be cancelled unilaterally at any time that the home was sold. It was de facto "sleeping on the couch of a friend" arrangement.

29. The residence was not "fixed" with a formal lease that could securely provide a place for the Plaintiffs to live. It was a temporary, month-to-month concession by a friend that could be cancelled unilaterally at any time.

30. It was not a "regular" residence, in that it was being offered for sale and the family could not "move in" in any traditional sense. Frequent showings required the Plaintiffs to vacate the residence and it could not be fully used, out of a concern that if being 'lived in' would lower the sale value of the home.

31. It was not an adequate residence in any sense of the word. The Plaintiffs knew that an offer could be put in at any time and they would immediately need to vacate the premises. In addition, the generosity of their acquaintance could be exhausted at any time. So it was a "luggage packed" arrangement and in practice was less secure than living in a hotel because of the inability to fully "move in".

32. At no time did the Plaintiffs change their utilities, bills, or other life matters to the temporary residence. Their driver's license remained the same, their mail continued to come to their old address, and in general the Plaintiffs remained out-of-home on a temporary basis.

33. For that reason, the temporary arrangements that the Plaintiffs secured did not quality as a fixed, regular and adequate residence under the relevant statutes.

34. By reason of the displacement caused by the fire, from at least November 24, 2021, through the end of 2023, Noa was a homeless child and youth as defined by 42 U.S.C. § 11434a(2)(A)–(B).

35. Under the McKinney-Vento Homeless Assistance Act, and other applicable laws, statutes, and practices of the Defendant, Noa was entitled to remain registered in their school of origin, Niles North High School, and she was entitled to receive transportation and related educational stability protections under the McKinney-Vento Act and other relevant laws, statutes and practices of the Defendant.

36. By reason of the displacement caused by the fire, from at least November 24, 2021 through the end of 2023, Noa was a homeless child and youth as defined by 105 ILCS 45/1-5 (Illinois Education for Homeless Children Act).

37. Under the Illinois Education for Homeless Children Act, 105 ILCS 45/1-10 and other applicable laws, statutes, and practices of the Defendant, Noa was entitled to remain enrolled in their school of origin, Niles North High School so long as they remained homeless and until the end of the academic year in which housing is acquired, and in some cases the best interest presumption this extends through graduation. In any event, Noa was a Junior in 2023 and the Defendant were required to maintain her registration through graduation.

**Deleted:** <#>¶

**Deleted:** s

**Deleted:** s

**Deleted:** s

**Deleted:** s

38. Throughout the 2021-2022, 2022-2023, and into the 2023-2024 academic school years, Noa remained registered at Niles North High School as provided under the relevant statutes and with the Defendant's full awareness of the family's displacement and continued homeless status as their home was rebuilt.

39. The temporary shelter during the disruptive period was not a fixed, regular and adequate residence within the meaning of 42, U.S.C. § 11434a(2)(A)-(B) for the reasons described above.

40. In June 2023, while Noa remained in temporary accommodations, Noa was re-registered at Niles North for the 2023-2024 academic year for Eleventh Grade.

41. At all relevant times, Noa's center of family and social life was in the district area including but not limited to her social peer group being from the district and attending Niles North, her participation in the Varsity Cheer Team of Niles North, her participation in the Symphonic Winds Ensemble, Israeli club, Hebrew Honor Society at Niles North. The synagogues that she did and does attend are in the district.

42. The temporary accommodations that they lived on a month-to-month basis and subject to eviction on immediate notice at any time rendered them "homeless" within the meaning of the relevant statutes.

43. On or about November 13, 2023, Defendant unlawfully issued Noa's parents a Notice of Residency Violation that asserted Noa was no longer entitled to attend Niles North High School.

44. On or about November 13, 2023, Defendant called Noa down to the Dean's Office, and told Noa that she is prohibited from attending classes and all programs at Niles North High School and would need to call her parents to pick her up. The Dean also called down her

coach on the Cheer Varsity Team to advise Noa, that she would be removed from the Team immediately.

45. On or about November 21, 2023, Defendant forcibly and officially withdrew Noa from Niles North High School and prohibited Noa from attending classes or participating in athletics, notwithstanding their continuing homeless status under federal law, as retaliation against the mother of Noa and in a discriminatory fashion.

46. On or about December 7, 2023, New Trier High School (outside of District 219, and Noa's s school of origin) registered Noa. Given the ill-timing of the registration (a week before final exams for the semester) Noa was required to drop her Advanced Placement classes and lost nearly all semester credits for the Autumn 2023 semester.

47. As a direct and proximate cause of the damage done by the Defendant, Noa withdrew from High School in May 2024.

48. On or about August 2025, Noa began college at Lake Forest College and currently resides at the Northbrook neighborhood in the County of Cook in the State of Illinois.

49. As a direct and proximate consequence of the actions of the Defendant, Noa suffered:

    (i.)    Academic detriment, including a change in her academic trajectory from a 4.0 GPA, Advanced Placement student to dropping out and ultimately attending a College that she would not have attended had the Defendant not wrongly disenrolled her;

    (ii.)    Delayed graduation due to loss of semester credits, graduation distinctions and participation, including but not limited to National Honor Society, Hebrew Honor Society, Loyola University Hebrew dual-credit program, Academic accolades, Advanced Placement classes and credits, Academic merit scholarships, Marching band and Symphonic Winds Ensemble, Senior class and sports traditions and events, Senior Prom, and Graduation;

    (iii.)    Foreseeable emotional and social harm;

    (iv.)    Terminated high school competitive athletics participation;

**Deleted:** s

**Deleted:** s

**Deleted:** s

**Deleted:** t

**Deleted:** s

**Deleted:** G

(v.)  Financial costs

(vi.)  Unfair treatment on account of ethnicity, nationality, perceived ethnicity, perceived nationality, and first amendment advocacy.

### ii.  *Plaintiff L.H.*

50.  Plaintiff, L.H. is a minor and a natural person who resides with their parents is a natural person who resides at Northbrook the County of Cook in the State of Illinois.

51.  L.H. is referred to in this First Amended Complaint under a pseudonym, but their true name is known to the Defendant.  They proceed in this action through their next friend, who is their mother Dorit Helmer.  Upon Judge Assignment, the Plaintiffs intend to move for leave to proceed under pseudonym to the extent required.

52.  L.H. was born in Chicago, where he has lived all his life.  At all relevant times, he was and is a citizen of the United States.

53.  At all relevant times L.H. was of Israeli heritage and did not identify as Arab.

54.  At all relevant times L.H. was of Ashkenazi Jewish heritage.

55.  At all relevant times L.H. was resident at Cook County in the State of Illinois.

56.  On or about August 2021, L.H. resided with their parents at Devonshire neighborhood, in the County of Cook in the State of Illinois, which at all times was within the attendance boundaries of Niles North High School, a public secondary school operated by Niles Township High School District 219.

57.  On or about the Summer of 2021, L.H. was registered as a student with Old Orchard Junior High School District 68 (the primary feeder school into Niles North High School), to commence the 2021-2022 academic year for Eighth Grade starting in August 2021.

**Deleted:** Original

**Deleted:** s

**Deleted:** s

58. On or about October 2021, L.H. was registered as a student with Niles Township High School District 219, to commence the 2022-2023 academic year for Ninth Grade starting in August 2022, as a resident student of Niles Township High School District 219.

59. On or about November 24, 2021, L.H.'s family home and all personal belongings were destroyed by fire, rendering the family displaced and without a fixed, regular, or adequate nighttime residence within the meaning of 42 U.S.C. § 11434a(2) (the McKinney-Vento Homeless Assistance Act).

60. The Defendant had actual knowledge of L.H.'s homeless status as of November 24, 2021, because among other reasons because among other reasons Dorit Helmer notified the District residency office and L.H.'s teachers, advisers, counselors, case managers, principal, and all other relevant parties staff, and the Defendant knew that L.H. and Noa were siblings and were both in the same homeless child and youth status.

61. The Defendant had actual and constructive knowledge of L.H.'s displacement.

62. Following the destruction of his home in the fire, L.H. and his family resided in hotels and other temporary accommodations for a short period, and on or about mid-December 2021 found temporary shelter in rental housing outside the geographic attendance boundaries of District 219 for the disruptive period while their home was rebuilt.

63. The temporary shelter during the disruptive period was not a fixed, regular and adequate residence within the meaning of 42, U.S.C. § 11434a(2)(A)-(B) for the reasons described above about the nature of the temporary housing arrangements.

**Deleted:** s

**Deleted:** s

**Deleted:** s

64. By reason of the displacement caused by the fire, from at least November 24, 2021 through the end of 2023, L.H. was a homeless child and youth as defined by 42 U.S.C. § 11434a(2)(A)–(B).

65. By reason of the displacement caused by the fire, from at least November 24, 2021 through the end of 2023, L.H. was a homeless child and youth as defined by 105 ILCS 45/1-5 (Illinois Education for Homeless Children Act).

66. Under the Illinois Education for Homeless Children Act, 105 ILCS 45/1-10 and other applicable laws, statutes, and practices of the Defendant, L.H. was entitled to remain enrolled in their school of origin, Niles North High School so long as they remained homeless and until the end of the academic year in which housing is acquired, and in some cases the best interest presumption this extends through graduation. In any event, L.H. was a Sophomore in 2023 and the Defendant was required to maintain his registration through graduation.

67. Throughout the 2022-2023, and into the 2023-2024 academic school years, L.H. remained registered at Niles North High School as provided under the relevant statutes and with the Defendant's full awareness of the family's displacement and continued homeless status as their home was rebuilt.

68. The temporary shelter during the disruptive period was not a fixed, regular and adequate residence within the meaning of 42, U.S.C. § 11434a(2)(A)-(B), as described fully above.]

69. In June 2023, while L.H. remained in temporary accommodations, L.H. was re-registered at Niles North for the 2023-2024 academic year for Tenth Grade.

70. At all relevant times, L.H.'s center of family and social life was in the district area, including but not limited to his social peer group, being from the district and attending Niles

Deleted: s

Deleted: s were

Deleted: s

North, his participation in Varsity Cheer, Football, and Gymnastics teams.  L.H. drove and drives to the district area on a nearly daily basis to meet with friends, and for religious and youth group meetings.  The synagogues that he attends are in the district area.

71.     The The temporary accommodations that they lived on a month-to-month basis and subject to eviction on immediate notice at any time rendered them "homeless" within the meaning of the relevant statutes.

72.     On or about November 13, 2023, Defendant unlawfully issued L.H.'s parents a Notice of Residency Violation that asserted L.H. was no longer entitled to attend Niles North High School.

**Deleted:** s

73.     On or about November 13, 2023, Defendant called L.H. down to the Dean's Office, and told L.H. he is prohibited from attending classes and all programs at Niles North High School and that he would need to call his parents to pick him up.  The Dean also called down his coach on the Cheer Varsity Team to advise them that he would be removed from the Team immediately.

**Deleted:** s

74.     On or about November 21, 2023, Defendant forcibly and officially withdrew L.H. from Niles North High School and prohibited L.H. from attending classes or participating in athletics, notwithstanding their continuing homeless status under federal law, as retaliation against the mother of L.H. and in a discriminatory fashion.

**Deleted:** s

75.     On or about December 7, 2023, New Trier High School (outside of District 219, and L.H.'s school of origin) registered L.H.  Given the ill-timing of the registration (a week before final exams for the semester) L.H. lost nearly all semester credits for the Autumn 2023 semester.

76. As a direct and proximate cause of the damage done by the Defendant, L.H. withdrew from High School in May 2024.

77. As a direct and proximate consequence of the actions of the Defendant, L.H. suffered:

     (i.)    Academic detriment, including a change in his academic trajectory from a sincere student to dropping out had the Defendant not wrongly disenrolled him; senior class and sports traditions and events, Senrior prom, and Graduation;

     (ii.)    Delayed graduation due to loss of semester credits, graduation distinctions and participation;

     (iii.)    Foreseeable emotional and social harm;

     (iv.)    Terminated high school competitive athletics participation;

     (v.)    Financial costs

     (vi.)    Unfair treatment on account of ethnicity, nationality, perceived ethnicity, perceived nationality, and first amendment advocacy.

### iii. *Plaintiff Dorit Helmer*

78. Plaintiff Dorit Helmer is a natural person and the mother of Plaintiffs Noa and L.H. Together with her husband who is the mother of their children, they reside at the County of Cook in the State of Illinois.

79. Where appropriate in this First Amended Complaint, Plaintiff Dorit Helmer is referred to as Dorit.

80. Dorit was born in Chicago and has lived in Chicago since she was of 9 years of age. She attended Niles North for High School. At all relevant times, she was and is a citizen of the United States.

81. At all relevant times Dorit was an Israeli citizen and of Israeli heritage.

82. At all relevant times Dorit was of Ashkenazi Jewish heritage.

Deleted: s

Deleted: s

Deleted: s

Deleted: ;

Deleted: Graduation

Deleted: Original

Deleted: 10

83.     At all relevant times Dorit was resident at Cook County in the State of Illinois.

84.     In or about August 2021, Dorit resided with their children at the Devonshire neighborhood, in the County of Cook in the State of Illinois, which at all times was within the attendance boundaries of Niles North High School, a public secondary school operated by Niles Township High School District 219.

85.     Dorit registered Noa in Niles Township High School District 219 on or about June 2021, for her to commence the 2021-2022 academic year for Ninth Grade.

86.     Dorit registered L.H. in Niles Township High School District 219 on or about October 2021, for him to commence the 2022-2023 academic Ninth Grade.

87.     On or about November 24, 2021, Dorit's home and all personal belongings were destroyed by fire, rendering her and her family displaced and without a fixed, regular, or adequate nighttime residence within the meaning of 42 U.S.C. § 11434a(2) (the McKinney-Vento Homeless Assistance Act).

88.     Defendant had actual knowledge of the Helmer family's homeless status as of November 24, 2021, because among other reasons Dorit Helmer notified the District residency office and Noa's and L.H.'s teachers, advisers, counselors, case managers, principal, and all other relevant parties staff.

89.     The Defendant had actual and constructive knowledge that Dorit's children had been displaced.

90.     Following the destruction of her home in the fire, Dorit and her children resided in hotels and other temporary accommodations for a short period, and on or about mid-

Deleted: s

Deleted: s

December 2021 found temporary shelter in rental housing outside the geographic attendance boundaries of District 219 for the disruptive period while their home was rebuilt.

91.     The temporary shelter during the disruptive period was not a fixed, regular and adequate residence within the meaning of 42, U.S.C. § 11434a(2)(A)-(B) for the reasons described above.

92.     Under the McKinney-Vento Homeless Assistance Act, and other applicable laws, statutes, and practices of the Defendant, Dorit was entitled to have her children remain registered in their school of origin, Niles North High School, and her children were entitled to receive transportation and related educational stability protections under the McKinney-Vento Act and other relevant laws, statutes and practices of the Defendant.

93.     By reason of the displacement caused by the fire, from at least November 24, 2021 through the end of 2023, Dorit's children were each a homeless child and youth as defined by 105 ILCS 45/1-5 (Illinois Education for Homeless Children Act).

94.      Under the Illinois Education for Homeless Children Act, 105 ILCS 45/1-10 and other applicable laws, statutes, and practices of the Defendant, Dorit's children were entitled to remain enrolled in their school of origin, Niles North High School so long as they remained homeless and until the end of the academic year in which housing is acquired, and in some cases the best interest presumption this extends through graduation.  In any event, Noa was a Junior in 2023 and the Defendans were required to maintain her registration through graduation.

95.     Throughout the 2021-2022, 2022-2023, and into the 2023-2024 school years, Dorit's children remained properly enrolled at Niles North High School as provided under the relevant statutes and with the Defendant's full awareness of the family's displacement and continued homeless status as their home was rebuilt.

**Deleted:** s

**Deleted:** s

**Deleted:** s

**Deleted:** t

**Deleted:** s

96. The temporary shelter during the disruptive period was not a fixed, regular and adequate residence within the meaning of 42, U.S.C. § 11434a(2)(A)-(B), as described fully above.

97. In June 2023 while Dorit and her children remained in temporary accommodations, Dorit's children were re-enrolled at Niles North for the 2023-2024 academic year for Tenth Grade and Eleventh Grade, respectively.

98. Dorit and her family's center of life has always been in the District. Dorit grew up in the District. The synagogues that Dorit and her family still attend today are in the district area. Dorit's friends and extended family live in the district. The majority of Dorit's family's life-long friends live in the district area. Dorit was and still is a very active, involved, and contributing community member in the district area. In May of 2021, Dorit's parents moved to live just a few blocks away from Plaintiffs' Skokie residence in order to be closer to the family and help with the children while Dorit was at work. The Defendant's actions caused great harm to Plaintiffs' family as it pulled the Plaintiffs and their family away from their extended family, friends, and life-long community.

99. On or about November 13, 2023, Defendant unlawfully issued Dorit a Notice of Residency Violation that asserted Dorit's children were no longer entitled to attend Niles North High School.

100. On or about November 21, 2023, Defendant forcibly withdrew Dorit's children from Niles North High School and permanently prohibited Dorit's children from attending classes or participating in athletics, notwithstanding their continuing homeless status under federal law, as retaliation against the mother of Dorit's, and in a discriminatory fashion.

**Deleted:** s

**Deleted:** s

**Deleted:** s

iv. ***Defendant Board of Education of Niles Township High School, District 219***

101. At all times relevant to this First Amended Complaint, Defendant **BOARD OF EDUCATION OF NILES TOWNSHIP HIGH SCHOOL, DISTRICT 219** was responsible for the de-registration of the Helmer family, and the torts described in this Complaint.

**FACTUAL BACKGROUNDS**

i. ***The Wrongful De-Registration of the Helmer Family***

102. As described above, the Defendant wrongly de-registered the Helmer family and all prior allegations are incorporated by reference.

ii. ***Any Administrative Appeal of the Determination, Defendant's was Unavailable and, if available, futile In the alternative, administrative procedures were exhausted***

103. Any admninistrative appeal of the determination of non-residency was unavailable, and if available, would have been futile. In the alternative, administrative procedures were exhausted.

104. Annexed as Exhibit B and incorporated by reference is the Notice of Non-Residency e-mailed to Dorit Helmer on November 13, 2023, together with copies of the attachments to that e-mail. The e-mail and attachments have been redacted of personally identifying information.

105. Upon information and belief, at no time was the Notice mailed or otherwise delivered to Dorit Helmer or any other Plaintiff other than the e-mail.

106. The letter accompanying the e-mail purported to provide ten (10) days to challenge the erroneous determination of non-residency, but in fact there was no method available to challenge the determination.

107. Dorit Helmer immediately reached out to the District. Without limitation to other evidence, annexed as Exhibit C is a complete, true and accurate copy of e-mails sent on November 14, 2023 that documented Plaintiff Dorit Helmer's inability to reach Mr. Chung.

108. On November 16, 2023, Dorit Helmer had a call with Mr. Chung in which they discussed the factual basis for the appeal. That conversation was contemporaneously documented in an e-mail dated November 16, 2023, a copy of which is annexed as Exhibit D.

109. In that e-mail, Dorit Helmer requested guidance on documenting their appeal and direction on how to exhaust her administrative remedies.

110. The District did not adequately respond and provided no direction.

111. On November 20, 2023, Dorit Helmer again reached out and asked "how to navigate" the administrative appeals process.

112. In another e-mail chain, the District on November 14, 2023 indicated that attendance "will not be possible"; and that the District "will be reviewing the legality of the request" to finish the semester, See Exhibit E. And in that same e-mail chain on November 22, 2023, indicated that "I was unable to help with your request", See Exhibit E.

113. What is clear from the documentary record and further information in the possession of the Defendant, an administrative appeal was not available. If available, it was futile.

114. And in the alternative, the decision that the District was "unable to help with your request" meant that all appeals and administrative remedies have been exhausted.

**Formatted:** Font: Not Bold, Complex Script Font: Not Bold

**Formatted:** Indent: Before: 1", No bullets or numbering

### iii. *Defendant's Treatment of the Plaintiffs was Retaliation for the Plaintiffs' First Amendment Protected Activity*

115. As described above, the Defendant wrongly de-registered the Helmer family and caused financial and other irreversible damage to Noa, L.H., and Dorit in retaliation for Plaintiff Dorit Helmer's First Amendment advocacy.

116. By way of background:

117. In October 2023, Arab Palestine launched an aggressive military campaign abroad (hereinafter "Toufan al-Aqsa"). Earlier this month, Arab Palestine in concert with its allied militaries accelerated its adventurism abroad through attacks against the United States and a dozen other countries (hereinafter "Va'de Tzadek"). These campaigns are referred to in this First Amended Complaint as the "War".

118. The War remains ongoing and relies heavily on overseas support to achieve its tactical and strategic goals.

119. Defendant's administrators, staff, and some of its students strongly support the war and have worked tirelessly to promote patriotism and an ultra-nationalist ethos at the school. This included a government-coordinated pro-war campaign by the staff, administration and some of the students at Niles North and retaliation against dissenters.

120. Acting in the name of, on behalf of, and as agents of self-described "civil society" overseas in Arab Palestine,[1] staff, administration at Niles North, acting together with

---

[1] In this First Amended Complaint the government of Arab Palestine is referred to as the "government".

The retaliation and discrimination alleged in this First Amended Complaint were committed in the name of, on behalf of, and as formal agents of the government. Specifically, the Defendant's administrators and staff promoted the "BDS Movement", a project to export the government's racist ideology and discriminatory policies overseas through local agents. Actions taken by the BDS Movement were done by Defendant and in Defendant's name.

some students, participated fully in the War through a campaign of ethnic intimidation, religious hate and physical violence against those who dissented from (or who were otherwise perceived to be enemies of) their government.

121. This campaign disproportionately impacted those with heritage or nationality ties to Palestine or its neighbors and who do not identify as "Arab"; those of Ashkenazi Jewish ancestry, and those who have political, religious, ethical objections to or who otherwise dissent from the Arab nationalist political project as defined by the government. In this First Amended Complaint, those in these classes are referred to generally as the "dissenters", and who were singled out because of their actual race, color, nationality, and religion.

122. Without limitation to other examples, on October 10, 2023, the Plaintiffs became aware of a military procession organized at Niles North by the government-linked Student for Justice in Palestine ("SJP") organization, and its allied groups ("the pro-war military procession").

123. The government's pro-war military procession was organized by the Defendant in coordination with the to further government policy and promote its war aims through

Niles North formally endorsed the government agents's actions through an official and/or unofficial policy to not enforce the Teacher handbook code of conduct, Title VI protections, or any other Illinois laws when those conflict with government policy. Defendant also has an official and/or unofficial policy to not enforce discipline or any codes of conduct for staff and students who act on behalf of the government. Defendant formally recognized the government's agents as "student groups".

The Defendant are in sole possession of the full documentation of their policies and how they addressed the conflict between their patriotism and commitment to the government on the one hand their legal obligations to dissenters under Illinois and United States law, on the other. In practice, when those conflicted, the Defendant chose the former. The Plaintiff respectfully reserves the right to amend this First Amended Complaint, should it be necessary, to more fully describe the Defendant's policies after they are identified in full at Discovery.

ethnic intimidation, religious hate, and physical violence against those who dissented at Niles North from government policy.[2]

124.     The military procession kicked off the Defendant's coordination of the government's ongoing pro-war campaign at Niles North throughout the 2023-2024 academic school year, as more fully described below.

125.     With the endorsement and strong encouragement of the Defendant, the staff, administration and some of the students at North Niles used their control over their students (and classmates) to promote government policy through physical intimidation, ethnic hostility, and religious hate against dissenters.

126.     Defendant's policies encouraged the government and those acting on its behalf to engage in a series of bomb threats through student school group chats against dissenters, including threats against religious institutions and students who dissented.

127.     Defendant had a formal policy to not enforce staff and student codes; and to refuse cooperation with Illinois and local police in investigating crimes and other actions done on behalf of the government.

128.     The Defendant promoted, endorsed, and facilitated a number of military processions by the government that involved physical intimidation, ethnic hostility, and religious

---

[2] *See* DAY OF RESISTANCE TOOLKIT (National Students for Justice in Palestine Oct. 7, 2023) that coordinated the government's National Day of [Muqawama] on October 12, 2023, including the Niles North Military Procession. Available online at https://www.investigativeproject.org/documents/1179/sjp-day-of-resistance-toolkit.pdf. Again, it is important here to distinguish between *independent action* by individual students (and in some situations, staff who are careful to not impose their religious and political beliefs on impressionable students), and the actions alleged here which were expressly done in the name of, on behalf of and as agents of the government, and which included widespread and continuing efforts to intimidate students into support for government policy.

hate against dissenters.  In accordance with formal policy, the Defendant did not enforce staff and student codes against those acting on behalf of the government.

129.    The Defendant promoted, endorsed, and facilitated a number of physical assaults against dissenters by those acting on behalf of the government.

130.    Concerned for her children's safety and for the treatment of students who were disproportionately impacted by their dissent from government policy, Dorit contacted Niles North administrators in October 2023 for clarification and security assurances.

**Deleted:** <#>¶

131.    The school administration brooked no dissent from government policy and adamantly refused to respond to Dorit or to otherwise ensure the safety, or otherwise provide support to dissenters.

132.    On or about mid-October, Dorit contacted Superintendent Dr. Thomas Moore directly to raise her concerns about physical intimidation, ethnic hostility, and religious hate by staff, administrators and students against those who dissented from government policy. She reported to him how the government and its supporters had created an atmosphere of discrimination, fear, and bigotry against dissenters at Niles North and Niles West.

133.    Over the following weeks, Dorit and Dr. Moore communicated multiple times regarding the District's handling of the physical intimidation, ethnic hostility, and religious hate by the government and its supporters against those who dissented from government policy or who otherwise opposed Toufan al-Aqsa.

134.    On or about mid-October 2023, Dr. Moore personally asked Dorit to act as his informal "liaison" to the parent community to help manage the growing volume of complaints concerned about the impact of government policy on their children.

135. Dorit agreed to assist and acted in good faith to facilitate communication between the District and concerned parents.

136. Despite her cooperation, both Niles North and Niles West High Schools enabled and promoted physical intimidation, ethnic hostility, and religious hate against dissenters.

137. Through 2023-2024, Dorit began to attend Village and Board of Education meetings to speak publicly about the District's inadequate response to discrimination against dissenters, and the campaign of physical intimidation, ethnic hostility, and religious hate against dissenters by the government and its supporters.

138. Even the Village's legal counsel and Mayor were baffled as to why the Board of Education, schools, and administration were not properly dealing with this issue.

139. Dorit also communicated with affected teachers and parents and advocated for the District to take corrective action and protect dissenting students and teachers from targeted hostility by the government, its supporters, pro-war advocates, and other participants in Toufan al-Aqsa.

140. This contrasts sharply with the Defendant's reaction to other high-profile political events. Pointedly, in 2020 when violence was committed in Minnesota in opposition to a political movement the Defendant supported, the Defendant held school assemblies, issued newsletters, offered school student social services and provided other allies of that political movement with support.

141. In this instance, the Defendant provided no support to dissenters, and did everything possible to silence and quiet those who opposed the Defendant's political program.

142. On or about November 9, 2023, an attorney representing affected families sent a formal letter to the District and Board outlining how the policies and values of their

**Deleted:** She

**Deleted:** <#>¶

government promoted by the District, the Board, the Schools, its administrators, its staff and some of its students, were in violation of students' rights under United States and Illinois law.

143. Dorit was courtesy copied on that legal letter, which put the District on formal notice of her association with First Amendment-protected advocacy.

144. Just four days later, on or about November 13, 2023, District 219 issued Dorit and her husband the Notice of Non-Residency described above.

145. Dorit sought assistance from New Trier High School, which agreed to enroll her children on December 7, 2023, approximately one week before final examinations.

146. When Dorit requested her children's transcripts and grades, Niles North personnel delayed and obstructed the process, making it difficult to complete the transfer.

147. New Trier's principal personally contacted District 219 to request permission for Dorit's children to complete the semester so they could transfer with proper credit, but the District refused.

148. New Trier's principal later informed Dorit that District 219 appeared unusually hostile toward her family, though he could not explain why.

149. Because the children joined New Trier so late in the semester, they were denied credit for most of their fall coursework.

150. The District never provided any legitimate or factual explanation for its sudden change in residency determination.

151. The proximity in time between Dorit's public advocacy for students, her communications with Dr. Moore, and the issuance of the residency violation establishes a clear causal connection.

152. Upon information and belief, the Defendant's actions were taken in retaliation for Dorit's exercise of her First Amendment rights to speak on matters of public concern and to petition school officials regarding discrimination.

153. The Defendant's conduct further reflected discrimination and hostility on the basis of Dorit's and her children's religion, heritage, and protected advocacy.

154. As a direct and proximate result of the Defendant's retaliatory conduct, Dorit and her family suffered significant educational, emotional, and financial harm.

**AS AND FOR THE FIRST CAUSE OF ACTION**
(§ 1983 Action to Enforce McKinney-Vento Rights)
(Plaintiffs against Board of Education Of Niles Township High School, District 219)

155. Each of the foregoing paragraphs is repeated, realleged and incorporated by reference as if set forth fully here.

156. From November 2021, through their un-enrollment, Noa and L.H. were "homeless" as defined in the statute.

157. The Defendant refused to allow Noa and L.H. to remain enrolled through the school year, did not provide transportation, and did not offer dispute resolution.

158. These acts deprived the Plaintiffs of their rights under color of law.

159. The Defendant's failure to provide the Plaintiffs their rights under the McKinney-Vento Act, caused damage to Noa that included, but was not limited to:

    (i.) Academic detriment, including a change in her academic trajectory from a 4.0 GPA, Advanced Placement student to dropping out and ultimately attending a College that she would not have attended had the Defendant not wrongly disenrolled her;

    (ii.) Delayed graduation due to loss of semester credits, graduation, raduation distinctions and participation, including but not limited to National Honor Society, Hebrew Honor Society, Loyola University Hebrew dual-credit program, Academic accolades, Advanced

---

Deleted: s

Deleted: s

Deleted: s

Formatted: Indent: Before: 1", No bullets or numbering

Deleted: ¶

Deleted: ;¶
Niles North High School

Deleted: s

Deleted: s

Deleted: s

Deleted: G

Placement classes and credits, Academic merit scholarships, Marching band and Symphonic Winds Ensemble, Senior class and sports traditions and events, Senior Prom, and Graduation;

(iii.) Foreseeable emotional and social harm;

(iv.) Terminated high school competitive athletics participation;

(v.) Financial costs; *and*

(vi.) Unfair treatment on account of ethnicity, nationality, perceived ethnicity, perceived nationality, and first amendment advocacy.

160. The Defendant's failure to provide the Plaintiffs their rights under the McKinney-Vento Act, caused damage to L.H. that included, but was not limited to:

(i.) Academic detriment, including a change in his academic trajectory from a sincere student to dropping out had the Defendant not wrongly disenrolled her;

(ii.) Graduation distinctions and participation;

(iii.) Foreseeable emotional and social harm;

(iv.) Terminated high school competitive athletics participation;

(v.) Financial costs

(vi.) Unfair treatment on account of ethnicity, nationality, perceived ethnicity, perceived nationality, and first amendment advocacy.

161. The Defendant's failure to provide the Plaintiffs their rights under the McKinney-Vento Act, caused damage to Dorit that included, but was not limited to:

(i.) Academic detriment of their children, including changing their academic trajectory, their ability to complete high school in person, the choice of college/university and other related impacts;

(ii.) Delayed graduation due to loss of semester credits, graduation distinctions and participation for their children;

(iii.) Foreseeable emotional and social harm;

(iv.) Terminated high school competitive athletics participation by their children;

(v.) Financial costs; *and*

Deleted: s

Deleted: s

Deleted: s

Deleted: G

(vi.)    Unfair treatment on account of ethnicity, nationality, perceived ethnicity, perceived nationality, and first amendment advocacy.

162.    Where appropriate in this First Amended Complaint, references to activity that "resulted in damages" is to the damages described above, the un-enrollement, and other damages.

**AS AND FOR THE SECOND CAUSE OF ACTION**
(Illinois Education for Homeless Children Act, 105 ILCS 45)
(Plaintiffs against Board of Education of Niles Township High School, District 219)

163.    Each of the foregoing paragraphs is repeated, realleged and incorporated by reference as if set forth fully here.

164.    From November 2021, through their un-enrollment, Noa and L.H. were "homeless" as defined in the statute.

165.    The Defendant refused to allow Noa and L.H. to remain enrolled through the 2023-2024 school year, did not provide transportation, and did not offer dispute resolution.

166.    These acts deprived the Plaintiffs of their rights under color of law.

167.    The Defendant's failure to provide the Plaintiffs with their rights directly and proximately resulted in damage to the Plaintiffs.

**AS AND FOR THE THIRD CAUSE OF ACTION**
(Title VI – Hostile Educational Environment)
(Plaintiffs against Board of Education of Niles Township High School, District 219)

168.    Each of the foregoing paragraphs is repeated, realleged and incorporated by reference as if set forth fully here.

169.    The Defendant excluded the Plaintiffs from the benefits of school, denied Plaintiffs' enrollment, and subjected the Plaintiffs to severe pervasive and objectively offensive

harassment because of the Plaintiffs' heritage and nationality ties to Palestine and its neighbors, while not identifying as "Arab", their Ashkenazi Jewish ethnic ancestry, and because of their religious objections to and dissent from the Arab nationalist political project.

170. The Defendant had actual knowledge of the pervasive and objectively offensive harassment.

171. The Defendant fully supported the government, and in support of that government and in furtherance of the strategic and military goals of Toufan al-Aqsa were deliberately indifferent to the damage caused to the Plaintiffs, thereby denying the Plaintiffs educational opportunities.

172. The Defendant's adoption of government policy had a disparate impact on the Plaintiffs, on the basis of the Plaintiffs' heritage and nationality ties to Palestine and its neighbors, while not identifying as "Arab", their Ashkenazi Jewish ethnic ancestry, and because of their religious objections to and dissent from the Arab nationalist political project.

173. The Defendant's failure to provide the Plaintiffs with their rights directly and proximately resulted in damage to the Plaintiffs.

**AS AND FOR THE FOURTH CAUSE OF ACTION**
(Illinois Civil Rights Act of 2003 (ICRA), 740 ILCS 23/5)
(Plaintiffs against Board of Education of Niles Township High School, District 219)

174. Each of the foregoing paragraphs is repeated, realleged and incorporated by reference as if set forth fully here.

175. The Defendant excluded the Plaintiffs from the benefits of school, denied Plaintiffs enrollment, and subjected the Plaintiffs to discrimination based on the Plaintiffs' heritage and nationality ties to Palestine and its neighbors, while not identifying as "Arab", their Ashkenazi

---

Deleted: s

Deleted: s

Deleted: s

Deleted: s

Deleted: ¶

Deleted: O

Deleted: ;¶
Niles North High School

Deleted: s

Jewish ethnic ancestry, and because of their religious objections to and dissent from the Arab nationalist political project.

176. The Defendant's adoption of government policy had a disparate impact on the Plaintiffs, on the basis of the Plaintiffs' heritage and nationality ties to Palestine and its neighbors, while not identifying as "Arab", their Ashkenazi Jewish ethnic ancestry, and because of their religious objections to and dissent from the Arab nationalist political project.

177. The Defendant's failure to provide the Plaintiffs with their rights directly and proximately resulted in damage to the Plaintiffs.

**AS AND FOR THE FIFTH CAUSE OF ACTION**
(§ 1983 Procedural Due Process)
(Plaintiffs against Board of Education of Niles Township High School, District 219)

178. Each of the foregoing paragraphs is repeated, realleged and incorporated by reference as if set forth fully here.

179. Plaintiffs had a protected interest in their enrollment at Niles North.

180. The Defendant deprived the Plaintiffs of enrollment at Niles North.

181. The Defendant provided no notice and opportunity to be heard before un-enrolling the Plaintiffs.

182. There was a causal link between the Defendant's denial of procedural due process resulted in damages to the Plaintiffs.

183. The Defendant's failure to provide the Plaintiffs their rights directly and proximately resulted in damage to the Plaintiffs.

Deleted: s

Deleted: s

Deleted: O

Deleted: ;¶
Niles North High School

Deleted: s

Deleted: s

Deleted: s

Deleted: s

**AS AND FOR THE SIXTH CAUSE OF ACTION**
(§ 1983 Equal Protection)
(Plaintiffs against Board of Education of Niles Township High School, District 219)

184.    Each of the foregoing paragraphs is repeated, realleged and incorporated by reference as if set forth fully here.

185.    Plaintiffs were treated differently because of their heritage and nationality ties to Palestine and its neighbors, while not identifying as "Arab", their Ashkenazi Jewish ethnic ancestry, and because of their religious objections to and dissent from the Arab nationalist political project.

186.    The Defendant's staff, administrators (and students acting with the encouragement of the Defendant) acted at the direction of and consistent with the policies of the government.  The policies of the government are to intentionally discriminate against those with heritage and nationality ties to Palestine and its neighbors, while not identifying as "Arab"; those who have Ashkenazi Jewish heritage; and those who have religious objections or who otherwise dissent from the Arab nationalist political project as defined by the government

187.    The Defendant otherwise acted with discriminatory intent.

188.    The Defendant acted under color of state law.

189.    The Defendant's failure to provide the Plaintiffs their rights directly and proximately resulted in damage to the Plaintiffs.

**AS AND FOR THE SEVENTH CAUSE OF ACTION**
(Title VI Retaliation)
(Plaintiffs against Board of Education of Niles Township High School, District 219)

190.    Each of the foregoing paragraphs is repeated, realleged and incorporated by reference as if set forth fully here.

191.    Plaintiffs engaged in protected activity.

Deleted: O

Deleted: ;¶
Niles North High School

Formatted: Font: 8 pt, Complex Script Font: 8 pt

Deleted: s

Deleted: s

Deleted: s

Deleted: s

Deleted: s

Deleted: ¶

Formatted: Font: 10 pt, Complex Script Font: 10 pt

Deleted: O

Deleted: ;¶
Niles North High School

Formatted: Font: 5 pt, Complex Script Font: 5 pt

192.  The school engaged in an adverse action against Plaintiffs by un-enrolling them.

193.  The Defendant's retaliation against the Plaintiffs proximately resulted in damage to the Plaintiffs.

**AS AND FOR THE EIGHTH CAUSE OF ACTION**
(Title VI Intentional Discrimination)
(Plaintiffs against Board of Education of Niles Township High School, District 219)

194.  Each of the foregoing paragraphs is repeated, realleged and incorporated by reference as if set forth fully here.

195.  Plaintiffs were subject to discrimination because of their heritage and nationality ties to Palestine and its neighbors, while not identifying as "Arab", their Ashkenazi Jewish ethnic ancestry, and because of their religious objections to and dissent from the Arab nationalist political project.

196.  The Defendant received federal funding from the United States government.

197.  The Defendant's staff, administrators (and students acting with the encouragement of the Defendant) acted at the direction of and consistent with the policies of the government.  The policies of the government are to intentionally discriminate against those with heritage and nationality ties to Palestine and its neighbors, while not identifying as "Arab"; those who have Ashkenazi Jewish heritage; and those who have religious objections or who otherwise dissent from the Arab nationalist political project as defined by the government.

198.  The Defendant otherwise acted with discriminatory intent.

199.  The Defendant's intentional discrimination against the Plaintiffs their rights directly and proximately resulted in damage to the Plaintiffs.

**AS AND FOR THE NINTH CAUSE OF ACTION**
(Title VI Intentional Discrimination)
(Plaintiffs against Board of Education of Niles Township High School, District 219)

200.    Each of the foregoing paragraphs is repeated, realleged and incorporated by reference as if set forth fully here.

201.    At all relevant times, the student Plaintiffs were students within the Defendant school district and were qualified individuals with disabilities within the meaning of Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, and Title II of the Americans with Disabilities Act, 42 U.S.C. § 12132.

202.    The student Plaintiffs had documented disabilities and were each the subject of duly issued educational accommodation plans, including Individualized Education Programs ("IEPs") and/or Section 504 Plans, entitling them to specific supports, services, and accommodations.

203.    Defendant receives federal financial assistance and are therefore subject to the requirements of Section 504, and are public entities subject to Title II of the ADA.

204.    Notwithstanding their obligations, Defendant failed and refused to provide LH and NH with the accommodations, services, and supports required under their IEPs and/or 504 Plans.

205.    Defendant further excluded Plaintiffs from participation in, denied them the benefits of, and/or subjected them to discrimination in educational programs and activities, by reason of their disabilities.

206.    As a direct and proximate result of the Defendant's actions, Plaintiffs were denied meaningful access to educational opportunities and a free appropriate public education, and suffered damages.

207. The Defendant acted with deliberate indifference to Plaintiffs' federally protected rights.

208. Plaintiffs are entitled to compensatory damages, injunctive relief, attorneys' fees, and such other relief as the Court deems just and proper.

209.

210. All Exhibits are complete, accurate and complete copies of the documents that they purport to be, except they have been redacted of personally identifying information including contact information.

*[Remainder of Page Intentionally Left Blank]*

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs respectfully prays for Judgment as follows:

A. A Declaratory Judgment that the Defendant discriminated against the Plaintiffs and wrongly un-enrolled them from Niles North;

B. A Permanent Injunction that enjoins Defendant, their agents and employees, and all persons acting in concert or participation with Defendant, from depriving the Plaintiffs and those similarly situated of their rights;

C. A Permanent Injunction that enjoins the Defendant, their agents and employees from adopting government policy to the extent such policies intentionally discriminate or have a disparate impact on those with heritage and nationality ties to Palestine and its neighbors, while not identifying as "Arab"; those who have Ashkenazi Jewish heritage; and those who have religious objections or who otherwise dissent from the Arab nationalist political project as defined by the government

D. Compensatory damages in an amount to be proven at trial;

E. Awarding Plaintiff's legal fees as provided under the relevant statutes and Illinois law;

F. Providing Legal and Equitable Relief to which the Plaintifsf is entitled; *and*

G. Awarding Plaintiff such other relief as this Court may deem just and proper under the circumstances and to which the Plaintiffs are entitled to under each Cause of Action.

**PLAINTIFF RESPECTFULLY
DEMANDS TRIAL BY JURY FOR THOSE ISSUES THAT ARE TRIABLE**

Dated: **March 27, 2026**

Respectfully Submitted,

| Deleted: s had |
| Deleted: s |
| Deleted: s |
| Deleted: s |
| Deleted: . |
| Deleted: November 13 |
| Deleted: , 2025 |

Baruch S. Gottesman, Esq.
GOTTESMAN LEGAL PLLC
11 Broadway, Suite 615
New York, NY 10004
bg@gottesmanlegal.com
*Counsel for the Plaintiffs*