UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

NOA HELMER; DORIT HELMER,
Individually and as Parent and Next Friend of
L.H., a minor,

           Plaintiff,

    v.

BOARD OF EDUCATION OF NILES
TOWNSHIP HIGH SCHOOL DISTRICT
219,

           Defendant.

No. 25-cv-13954
Judge Georgia N. Alexakis

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS
MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

Defendant, BOARD OF EDUCATION OF NILES TOWNSHIP DISTRICT 219, (hereinafter the "District"), by and through its attorneys, Nikoleta Lamprinakos, and Aidan C. Falk, of ROBBINS SCHWARTZ, LTD., and for its Memorandum in Support of its Motion to Dismiss Plaintiffs' Amended Complaint (hereinafter "Complaint") in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6), states as follows:

**ARGUMENT**

I.     **Count V must be dismissed pursuant to FRCP 12(b)(1) as this Court lacks subject matter jurisdiction over the claim.**

Within Count V, Plaintiffs assert that the District violated their Procedural Due Process under Section 1983 by depriving them of enrollment at the District. *See* Dkt. 30, ¶¶180-182. Plaintiffs simply assert that "Defendants provided no notice and opportunity to be heard before unenrolling the Plaintiffs." *Id.* at ¶ 181. As shown by their own allegations and exhibits attached to their Complaint, Plaintiffs failed to avail themselves of the procedural due process afforded to

1

them to challenge the determination of non-residency. Accordingly, Plaintiffs' own inaction thwarted their due process and ability to exhaust the administrative remedies available to them.

Within the factual background section of their Complaint, which is reincorporated within Count V for reference, Plaintiffs allege that the District issued Dorit and her husband the Notice of Non-Residency on November 13, 2023. *Id*. at ¶43, 72, 99. Plaintiffs then claim that "any administrative appeal of the determination of non-residency was unavailable, and if available, would have been futile." *Id.* at ¶ 103. Plaintiffs attached the Notice of Non-Residency that was emailed to Dorit as an exhibit to their complaint and included the attachments that were provided with the Notice of Non-Residency which states the following:

> You are entitled to request a hearing before the Board of Education or its appointed hearing officer to review this determination. <u>If you choose to request such a hearing, a written request must be sent, via certified mail, return receipt requested, to the District's Superintendent within ten (10) calendar days of your receipt of this Notice.</u> Copies of the District's Non-Residency procedures and residency hearing procedures are enclosed for your review.

> If you request a hearing, your children will be allowed to attend school within the District until the hearing is held and the Board renders a decision concerning your children's residency.

*See* Dkt. #30-2, p. 3 of 9 (emphasis added). Notably, as stated within the Notice of Non-Residency, the District's Administrative Procedure (7:60) "Administrative Procedure: Challenging a Current Student's Residence Status," and the District's Residency Hearing Procedures[1] were provided to Dorit. *Id*. The "Administrative Procedure Challenging a Current Student's Residency Status," as its title suggests, provides the actions required for challenging a current student's residency status. *See* Dkt. #30-2, p. 4-6 of 9. Specifically, it provides that the "Person who Enrolled the Student" "Within ten (10) calendar days after receipt of the notice, may

---

[1] The District's Administrative Procedure 7:60, which is attached to Plaintiffs' Complaint is modeled after the Illinois School Code. The District requests that this Court take judicial notice of The Illinois School Code, 105 ILCS 5/10-20.12b, which is attached as <u>Exhibit A</u>.

2

request a hearing to review the determination that tuition is due. The request shall be sent certified mail, return receipt requested, to the Superintendent." *Id.* Accordingly, both the Notice of Non-Residency and the Administrative Procedure attached, which were sent to Dorit on November 13, 2023, provided her with the administrative remedies available to Plaintiffs, i.e. due process, to challenge the determination of non-residency. To exhaust the administrative remedies available to them, Plaintiffs needed to send a written request for a hearing to review the determination of non-residency to the Superintendent by November 23, 2023, via certified mail.

Plaintiffs go on to allege a series of events that followed Dorit's receipt of the Notice of Non-Residency, as well as the attached Administrative Procedures, which includes her emails to and phone calls with District Administrator, Mr. Ray Chung. *See* Dkt. #30, ¶¶107-114; Dkt. #30-3. Based on this series of events, Plaintiffs conclude that "an administrative appeal was not available" and that "the decision that the District was 'unable to help with your request' mean that all appeals and administrative remedies have been exhausted." *Id*. at ¶¶ 113-114. Significantly, what Plaintiffs fail to allege, and what the exhibits attached to their Complaint illustrate, is that Dorit did not follow the administrative procedure to challenge the determination of residency. Absent from the Complaint and attached exhibits are any allegations or documentation that Dorit sent a written request for a hearing to review the determination of non-residency to the Superintendent by November 23, 2023, via certified mail, as is required to initiate due process under Administrative Procedure 7:60. Accordingly, Plaintiffs' conclusory allegations that "all appeals and administrative remedies have been exhausted" is erroneous and disproven by their own exhibits. The District provided Plaintiffs with the information and instructions needed to review the determination of non-residency (i.e. Procedural Due Process), yet Plaintiffs failed to avail themselves of such due process. Plaintiffs' failure to avail themselves of the procedural due

process afforded to them does not equate to the District violating their due process rights, and most certainly does not suggest that all appeals and administrative remedies were exhausted or futile.

Thus, Count V must be dismissed pursuant to FRCP 12(b)(1) as the court lacks subject matter jurisdiction. The District provided Plaintiffs with its Administrative Procedures that provide the procedure to challenge a determination of non-residency. Plaintiffs are prohibited from bringing this claim before this Court until they have exhausted all potential administrative remedies provided within the District's Administrative Procedure 7:60. *Arnold v. Bd. of Educ. For Round Lake Area Schools*, *CUSD No. 116*, F. Supp. 2d 1073, 1076 (N.D. Ill. 2002). Plaintiffs may have alleged that they have exhausted all potential administrative remedies or that the process may be futile, however, such allegations are conclusory and contradicted by their own exhibits. If Plaintiffs are unsatisfied with the outcome of the full administrative proceedings, only then should they look to the courts for relief. *Id.* Therefore, this Court lacks subject matter jurisdiction over Count V as Plaintiffs failed to exhaust all potential administrative remedies and Count V must be dismissed pursuant to FRCP 12(b)(1).

II.     **<u>Counts I, II, III, IV, V, VI, VII, VIII, and IX must be dismissed pursuant to FRCP 12(b)(6) as Plaintiffs fail to state claims upon which relief can be granted.</u>**

   A. **Count I must be dismissed pursuant to FRCP 12(b)(6) as Plaintiffs Noa and L.H. do not qualify for homelessness under the McKinney Vento Act.**

Plaintiffs Noa and L.H. qualify as "homeless" under the McKinney Vento Act ("the Act") only from November 24, 2021, until December of 2021, when they found temporary housing outside the District. From December of 2021 through November of 2023, Plaintiffs were not homeless under the Act; therefore, Plaintiffs do not have any rights that can be enforced under the Act in November of 2023, which is the time they allege to have been unlawfully unenrolled from the District. The Act was enacted to assure that each homeless youth has access to a free,

4

appropriate public education… [and that] homelessness alone…not be sufficient reason to separate students from the mainstream school environment. 42 U.S.C. §§ 11431. In general, the Act defines "homelessness" or a "homeless individual" as an individual or family that **lacks a fixed, regular, and adequate nighttime residence**. 42 U.S. Code § 11434a(2)(A)-(B) (emphasis added). The Act also provides other ways in which an individual can qualify as "homeless"; however, none apply to the facts alleged within the Complaint, nor do Plaintiffs rely on these other subsections.

Within the Complaint, Plaintiffs allege that their family home was destroyed by a fire on November 24, 2021, displacing them and rendering them without a fixed, regular or adequate nighttime residence within the meaning of the Act. *See* Dkt. 30, ¶¶ 21, 59, 87. Plaintiffs allege that following the destruction of their home in the fire, they resided in hotels and other temporary accommodations for a **short period**. *Id*. at ¶¶23, 50 (emphasis added). It is only during this short period that Plaintiffs are considered homeless under the Act as they are residing in hotels, lacking a fixed and regular nighttime residence. However, within the same paragraph, Plaintiffs go on to allege that "on or about mid December 2021 [Plaintiffs] found temporary shelter in rental housing outside the geographic attendance boundaries of District 219 for the disruptive period while their home was rebuilt." *See* Dkt. 30, ¶¶ 25, 62, 90. The rental housing, located outside of the District, in which Plaintiffs lived beginning in December of 2021 through the alleged unlawful unenrollment in November of 2023, is a fixed, regular, and adequate nighttime residence as provided by the Act.[2] Notably, within this operative Complaint, Plaintiffs have removed their previous allegations that they remained in the temporary rental housing while their original house

---

[2] Within their initial Complaint (Dkt. 1), Plaintiffs alleged that they remained at that rental house while their original house was being rebuilt, even throughout the 2023-2024 school year. *See* Dkt. 1, ¶23 50, 79. Such allegation has been removed within their Amended Complaint (Dkt. 30) likely due to the implications of remaining at the rental house for the following two school years on Plaintiffs' alleged status of homelessness. Considering Federal Rule of Civil Procedure 11(b)(3), the District requests that this Court take judicial notice of paragraphs 23, 50, 79 of Dkt. 1.

was rebuilt even throughout the 2023-2024 school year. *See* Dkt. 1, ¶23 50, 79. Instead, Plaintiffs provide illustrative qualifications of their living accommodations following the November 2023 fire in attempt to satisfy the definition of "homeless individual" under 42 U.S. Code § 11434a(2)(A)-(B).

Plaintiffs' additional factual inferences and qualifications still fail to meet the standard and sufficiently allege that Plaintiffs L.H. and Noa qualify as "homeless" under the Act. To survive a 12(b)(6) motion to dismiss, a complaint must contain sufficient facts, accepted as true, "to state a claim for relief that is plausible on its face." *Ashcroft,* 556 U.S. at 678. Courts are not required to accept assertion of law or unwarranted factual inferences. *Stachowski*, 425 F.3d at 1078. Plaintiffs' allegations oscillate from identifying their temporary rental home as "temporary accommodations" and "temporary shelter." Such qualifications are insufficient and such inferences are unwarranted. When looking past the verbose and illustrative language contained in the Complaint, it is obvious that Plaintiffs' living accommodations after December 21, 2021, were fixed, regular and adequate.

The Act operates by exclusion and lists what does not constitute a fixed home: sharing housing due to economic hardship; living in motels, hotels, trailer parks or camping grounds due to lack of alternatives; living in emergency/transitional shelters; abandoned in hospitals; primary nighttime residence is a public/private place not designed for sleeping; living in cars, parks, public spaces, abandoned buildings, substandard housing, bus/train stations. 42 U.S.C. § 11434a(2). Plaintiffs do not allege that they were living under any of circumstances listed within the Act. Instead, Plaintiffs allege that their temporary rental housing was on a month-to-month agreement without a lease, that they could not "move in in any sense of the word," that they were "de facto sleeping on the couch of a friend" and in a "luggage packed arrangement." *See* Dkt. #30, ¶¶26-31. However, it is not Plaintiffs' verbose qualifications of their living arrangements that the Court

6

relies on to determine homelessness under the Act; it is what the allegations reveal as Plaintiffs' actual living arrangements, considered within the scope of the Act.

First, and most importantly, Plaintiffs were offered temporary housing in Elgin or Itasca by the insurance company and relocation services. *See* Dkt. #30, ¶27. Although Plaintiffs claim such housing is "inappropriate," and "less secure than a hotel," this temporary housing is an alternative that Plaintiffs could have pursued, evidencing that there was no "lack of an alternative" as required under the Act. 42 U.S.C. § 11434a(2). The month-to-month agreement Plaintiffs settled on with their friends was made due to their own preferences, rather than a lack of alternatives, and is fixed, per month. *See* Dkt. #30, 27-29. Second, Plaintiffs' allegations state that they were living in their friends' house, not that they were living in shared housing, i.e. sharing housing (all occupants of all families living under one roof) of other persons due to loss of housing. It can be deduced based on Plaintiffs' allegations that the house was being offered for sale and "could not look lived in," and that the house was empty prior to Plaintiffs' occupancy. *Id.* at ¶30. Finally, inadequate housing under the Act would be sleeping in places not meant for sleeping or that are substandard housing, i.e. cars, parking lots, public spaces, infested homes. 42 U.S.C. § 11434a(2). Here, Plaintiffs' temporary home was in good enough condition to be sold, which is adequate.

Accordingly, the out-of-district rental house was Plaintiffs' regular, fixed, and adequate nighttime accommodation from December 2021 through the date of alleged unlawful unenrollment in November of 2023. Courts are not required to accept assertion of unwarranted factual inferences. *Stachowski,* 425 F.3d at 1078. Plaintiffs' assertion that they were considered "homeless" under the Act from November 24, 2021, through the end of 2023, is an unwarranted factual inference that this Court must not accept. *See* Dkt. 30, ¶¶ 34, 64. Because Plaintiffs were not "homeless" under the Act in November of 2023, much less the 2022-2023 and 2023-2024 school years, the Act does

7

not apply to them, and they have no standing to enforce the rights provided under the Act at the time of their alleged unlawful unenrollment. Therefore, the Complaint fails to contain sufficient allegations that state a claim for violation of the Act that is plausible on its face, and Count I must be dismissed pursuant to FRCP 12(b)(6).

**B. Count V must be dismissed pursuant to FRCP 12(b)(6) as Plaintiffs have failed to state a claim for violation of procedural due process under Section 1983.**

Count V must be dismissed pursuant to FRCP 12(b)(6) as Plaintiffs have failed to state a claim of violation of procedural due process under Section 1983. A procedural due process claim requires that a claimant receive adequate process. "In evaluating what process satisfies the Due Process Clause, ... the Supreme Court has distinguished between (a) claims based on established state procedures and (b) claims based on random, unauthorized acts by state employees." *Leavell v. Ill. Dep't of Nat. Res.*, 600 F.3d 798, 804 (7th Cir. 2010). "[A] plaintiff may challenge an established state procedure on due process grounds where it is alleged that the state procedure destroys his entitlement without according him proper procedural safeguards." *Gates v. Towery*, 331 F. Supp. 2d 666, 670 (N.D. Ill. 2004). In the context of a procedural due process claim based on "random, unauthorized" acts, "the plaintiff must either avail herself of state post-deprivation remedies or demonstrate that the available remedies are inadequate." *Leavell*, 600 F.3d at 805. "If the plaintiff has not availed herself of state remedies, she cannot state a valid procedural due process objection if she does not include a challenge to the fundamental fairness of the state procedures." *Id.* A procedural due process claim will be dismissed where an established procedure existed to challenge the municipality's action and the plaintiff had not alleged that the remedy was procedurally inadequate. *Yaodi Hu v. City of Chicago*, 2009 WL 635522, at *2 (N.D. Ill. Mar. 12, 2009).

Here, and as has been indicated above in Section I, Plaintiffs have failed to allege that they availed themselves of the remedies provided under the District's Administrative Procedure. Further, Plaintiffs have failed to include a challenge to the fundamental fairness of the procedures provided within the District's Administrative Procedures. Plaintiffs must have availed themselves of and engaged in the administrative remedies available to them to then be able to state a claim for violation of procedural due process. *Leavell*, 600 F.3d at 805. They have failed to make such allegations. Accordingly, Count V is not a valid procedural due process claim and must be dismissed pursuant to FRCP 12(b)(6).

### C. Counts I, V, and VI must be dismissed because Plaintiffs fail to allege a policy, practice, or widespread custom that caused harm to Plaintiffs.

Liability cannot be imposed against governmental entities like the District, under Section 1983 pursuant to principles of respondeat superior; rather, plaintiff must establish that an official "policy" caused plaintiff to suffer a violation of his constitutional rights. *Monell v. New York City Dept. of Social Services*, 436 U.S. 658 (1978). Governmental entities may only be held liable under Section 1983 if the constitutional deprivation alleged was the result of official policy, custom, or pattern. 42 U.S.C. § 1983; *Monell v. Dep't of Soc. Servs. Of City of New York*, 436 U.S. 658, 690-91 (1978). To adequately allege a Monell policy claim, a plaintiff must plead factual content that allows the court to draw the reasonable inference that the entity maintained a policy, custom, or practice that contributed to the alleged violation. *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011). Thus, to sufficiently plead that the District deprived Plaintiffs of a constitutional right, they must allege sufficient facts that the District had customs or policies in place that contributed to the unenrollment of Noa and L.H. and other damages allegedly caused to Plaintiffs.

An unconstitutional "custom" or "policy," as required to hold the District liable for constitutional violations under Section 1983, can take one of three forms: (1) an express policy

that, when enforced, causes a constitutional deprivation; (2) a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; or (3) an allegation that the constitutional injury was caused by a person with final policy-making authority. *Brokaw v. Mercer Cnty.*, 235 F.3d 1000 (7th Cir. 2000).

It is Plaintiffs' burden to demonstrate the essential policy or custom at issue. *Smith v. Chicago School Reform Board of Trustees*, 165 F.3d 1142, 1149 (7th Cir. 1999) (citing *Board of County Commissioners of Bryan Cnty., Oklahoma v. Brown*, 520 U.S. 397, 403 (1997)). Under any theory, Plaintiffs must demonstrate that the District was "deliberately indifferent" to the "known or obvious consequences" of the alleged policy. *See*, *Bryan Cnty.*, 520 U.S. at 407; *Montano v. City of Chicago*, 535 F.3d 558, 570 (7th Cir. 2008). Finally, plaintiff must demonstrate the existence of a direct causal link between the governmental policy and the constitutional injury. *City of Canton v. Harris*, 489 U.S. 378, 385 (1989); *Bryan Cnty.*, 520 U.S. at 400. As discussed in more detail below, Plaintiffs have failed to plead sufficient facts for each element of any *Monell* claim. As such, Counts I, V, and VI against the District must be dismissed.

Here, Plaintiffs allege the following violations of constitutional rights under Section 1983 by the District: (1) violation of Plaintiffs' rights under McKinney-Vento (Count I); (2) violation of Plaintiffs' procedural due process rights (Count V); and (3) a violation of Plaintiff's Equal Protection rights (Count VI). In doing so, the Plaintiffs do not assert that such violations resulted from an officially enacted policy of the District or a widespread custom or practice with any specificity. In Counts I and V, there is not a single allegation relating to a policy or practice of the District. In Count VI, Plaintiffs claim that the Equal Protection violation was related to "policies of the government" and makes no mention of District policy. *See* Dkt. 30, ¶ 186. Further, Plaintiffs

claim that the <u>governmental</u> policies "intentionally discriminate against those with heritage and nationality ties to Palestine and its neighbors, while not identifying as "Arab"; those who have Ashkenazi Jewish heritage; and those who have religious objections or who otherwise dissent from the Arab nationalist political project as defined by the government." *Id*. Then Plaintiffs shift to allege that the District "acted with discriminatory intent" without any reference to a District policy or practice. *See* Dkt. 30, ¶ 187. More importantly, in the factual allegations of the Complaint, Plaintiffs consistently refer to "governmental policies," which they identify as the "government of Arab Palestine" and make no reference whatsoever to any actual, non-conclusory, or established District policy. *See* Dkt. 30, p. 19. Absent even the most minimum factual allegations relating to a District policy, the Complaint does not put Defendant on notice of the *Monell* policy claims it seeks to advance.  As such, Counts I, V, and VI of Plaintiffs' Complaint must be dismissed.

**D. Counts III, VII, VIII, and IX must be dismissed pursuant to FRCP 12(b)(6) as Plaintiffs have failed to sufficiently state a claim for a violation of Title VI of the Civil Rights Act of 1964.**

Counts III, VII, VIII, and IX of Plaintiffs' Complaint allege that the District caused Plaintiffs Noa and L.H. to be unenrolled in the District in violation of Title VI of the Civil Rights Act of 1964. Title VI of the Civil Rights Act of 1964 provides, "No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d. Title VI does not address religious-based discrimination, but courts recognize that "antisemitism can amount to racial discrimination, and thus form the basis for a Title VI claim." *Canel v. Art Institute of Chicago*, No. 23 CV 17064, 2025 WL 564504, at 5 (N. D. Ill. Feb. 20, 2025).

1. <u>Count III: Hostile Educational Environment.</u>

11

To establish a hostile educational environment claim under Title VI, a plaintiff must show that: (1) the student participated in a federally funded program; (2) the alleged hostile environment was so severe, pervasive, and objectively offensive that it deprived the student of access to educational benefits; (3) the school had actual knowledge of the conduct; and (4) the school was deliberately indifferent toward the conduct. *Doe v. Galster*, 768 F.3d 611, 617 (7th Cir. 2014). The District does not contest that it receives federal funding and that Noa and L. H. were students enrolled in the District, satisfying the first element as to Plaintiffs Noa and L. H. The District does, however, contest that Plaintiff Dorit Helmer has standing to bring the Title VI claim as a Title VI plaintiff must themself be a participant or beneficiary in the program at issue. 42 U.S.C.A. § 2000d. Since Dorit is not a participant in or beneficiary of the District, i.e. a student, she has no standing to bring a claim under Title VI.

Further, the District also contests that Plaintiffs have not sufficiently alleged the second element: that the hostile environment was so severe, pervasive and objectively offensive that it deprived the student of access to educational benefits. First, and most importantly, Noa and L.H. were unenrolled from the District due to their status of non-residency, not because of their national origin. *See* Dkt. 30, ¶¶ 25, 43, 62, 72. Specifically, Plaintiffs allege that Noa and L.H. were "wrongly de-registered" in retaliation for Dorit's First Amendment activity. *See* Dkt. 30, ¶¶ 115, 152. Plaintiffs' commingling of each Plaintiff's own personal conduct is inappropriate, especially when Dorit does not have standing to bring a Title VI Claim.[3] When removing the allegations specific to Dorit Helmer, Plaintiffs fail to assert any allegations that draw a connection between their national origin, their religion, and their alleged unenrollment.

---

[3] Notably, Plaintiff, Noa, is an adult, and Plaintiff, Dorit, is not a next friend of Noa, further differentiating and separating the conduct between the parties.

Furthermore, a hostile educational environment claim requires more than a single upsetting episode. In the education context, courts have required consistent and/or severe misconduct, such as physical threats, the use of racial epithets, violence, or sexual contact and abuse at school to establish a hostile environment claim. *Doe I v. Bd. of Educ. of City of Chicago*, 364 F. Supp. 3d 849, 860 (N.D. Ill. 2019) (school employee who made sexually explicit comments to students, walked into locker room while students were changing, sexually touched students, slapped them, and committed battery against students, created a hostile educational environment); *Qualls v. Cunningham*, 183 F. App'x 564, 567 (7th Cir. 2006) (threats, racial slurs, and unfounded attempts by campus police to detain plaintiff would constitute a hostile educational environment); *Galster*, 768 F.3d at 618 (student-on-student harassment involving multiple serious violent physical attacks created a hostile learning environment). Even when a school authority figure is responsible for the offensive conduct, a hostile environment claim requires more than isolated episodes. See *Adusumilli v. Illinois Inst. of Tech.*, No. 97 C 8507, 1998 WL 601822, at *4 (N.D. Ill. Sept. 9, 1998).

In *Elagha*, plaintiff alleged violations of Title VI against her law school; specifically, that her law school created a hostile educational environment for her, a Palestinian Muslim woman, after she participated in Pro-Palestinian protests and was being harassed and targeted by other students, putting her at risk of losing career opportunities. *Elagaha v. Northwestern University*, 2025 WL 1384291, at *2 (N.D. Ill. May 13, 2025). The court determined that plaintiff's allegations did not satisfy the "severe and pervasive" element of her claim as her allegations that she was recorded at a protest without consent, that community members made threatening remarks about protestors' future career prospects, and the public exposure of her scholarship status were troubling but they could not be characterized to the level of "severe, pervasive, and objectively offensive."

13

*Id*. at \*5. The court also determined that plaintiff failed to adequately allege that she was deprived of educational benefits while the harassment was ongoing. *Id*. The court pointed to dropping grades, becoming homebound or hospitalized due to harassment, or physical violence as examples of negative impacts on education. *Id*.

Here, Plaintiffs only allege that they were excluded from the benefits of school, i.e. their alleged unlawful unenrollment. *See* Dkt. 30, ¶ 169. Not only is this a single episode, but it can be inferred from Plaintiffs' allegations that this alleged deprivation of educational benefits happened at the conclusion of harassment, not during. Most significantly, Plaintiffs fail to provide any allegations of direct harassment they (Noa and L.H.) experienced at the hands of the District. Plaintiffs only allege that they were subjected "to severe pervasive and objectively offensive harassment because of their heritage and nationality ties," without providing any detail as to the harassment they directly or actually experienced. Not only does this vague allegation fail to hold a candle to the plaintiff's allegations of harassment in *Elagha*, which were not considered severe, pervasive, and objectively offensive; they utterly fail to rise to the level of "severe, pervasive, and objectively offensive" as the standard is understood within this jurisdiction. Plaintiffs must allege facts sufficient "to raise a right to relief above the speculative level" in order to survive a motion to dismiss under Rule 12(b)(6). *Twombly*, 550 U.S. at 555. Plaintiffs' allegations as to the severe, pervasive and objectively offensive harassment they experienced at the hands of the District are speculative at best. The elements of a hostile educational environment are cumulative; therefore, if Plaintiffs are unable to sufficiently allege just one element, the entire claim fails. Accordingly, Plaintiffs have failed to sufficiently assert a claim of hostile educational environment under Title VI and Count III must be dismissed pursuant to Rule 12(b)(6).

    2.  <u>Count VII: Retaliation under Title VI.</u>

To succeed on a claim for retaliation under Title VI, a plaintiff must establish that (1) she engaged in protected activity, (2) her educational institution took an adverse action against her, and (3) a causal connection existed between the protected activity and the adverse action. *Brown v. William Rainey Harper Coll.*, 2017 WL 3278822, at \*5 (N.D. Ill. Aug. 1, 2017). Within Count VII of their Complaint, Plaintiffs allege Title VI Retaliation, only asserting that "Plaintiffs engaged in protected activity" and that the District "engaged in an adverse action against Plaintiffs by un-enrolling them." See Dkt. 30, ¶¶191-192. Within Count VII, Plaintiffs fail to allege in what protected activity they engaged. In the Complaint as a whole, the only protected activity that is remotely alleged is Dorit's First Amendment advocacy. See Dkt. 30, ¶¶ 115, 152. Absent from the Complaint are any allegations that Plaintiffs Noa or L.H. engaged in protected activity. As established above, and in a subsequent section, Dorit does not have standing to bring a Title VI claim as she is not a participant or beneficiary to the District, i.e. a student. U.S.C.A. § 2000d. Accordingly, Plaintiffs Noa and L.H. cannot rely on the conduct of Dorit to establish that they, Noa and L.H., engaged in protected activity. Plaintiffs' formulaic recitation of the elements of a Title VI Retaliation claim is insufficient and does not survive a motion to dismiss under Rule 12(b)(6). Thus, Count VII must be dismissed.

3. Count VIII: Intentional Discrimination under Title VI.

In Count VIII, Plaintiffs bring a claim for national origin discrimination under Title VI, alleging that the District "acted at the direction of and consistent with the policies of the government" and that the "policies of the government are to intentionally discriminate against those with heritage and nationality ties to Palestine and its neighbors…" *See* Dkt. 30, ¶ 197. To state a claim under Title VI, plaintiffs must allege facts satisfying two elements: (1) that they have been intentionally discriminated against on the grounds of [national origin]; and (2) that defendants

15

are recipients of federal financial assistance. *Khan v. Midwestern* University147 F. Supp. 3d 718, 720 (N.D. Ill. 2015). To adequately plead discrimination, a plaintiff must allege "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Threadbare allegations and conclusory statements are not sufficient to support a plausible cause of action. *Id*. In general, an intentional discrimination inquiry in Title VI asks whether an institution has treated a person less favorably because of that person's protected class. *U.S. Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 715, 103 S.Ct. 1478, 75 L.Ed.2d 403 (1983). To show this, a complaint must allege "fact-based allegations" that the defendant "was aware of or was deliberately indifferent to-- discriminatory acts." *Foster v. Mich.*, 573 Fed. Appx. 377, 388 (6th Cir. 2014). The District does not contest that it receives federal financial assistance.

Here, Plaintiffs fail to plead any fact-based allegations which sufficiently establish the first required element of intentional discrimination on the grounds of national origin. *Khan,* 147 F. Supp. 3d 720. Although Plaintiffs generally allege that the District is "acting consistent with the policies of the government" and "that the government policies are intentionally discriminate," they fail to provide any facts that amount to anything greater than conclusory allegations. A complaint requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action. *Twombly*, 550 U.S. at 555. Plaintiffs must allege facts sufficient "to raise a right to relief above the speculative level" in order to survive a motion to dismiss. *Id.* Beyond being almost impossible to decipher what Plaintiffs are actually trying to plead, Plaintiffs' allegation that the District acted consistent with government policies that are intentionally discriminatory, does not automatically and sufficiently state a valid claim for Title VI intentional discrimination. Plaintiffs fail to identify which specific government policy intentionally discriminates against them. They

16

fail to provide any fact-based allegations as to how that government policy discriminates against them specifically, on behalf of their national origin. They utterly fail to allege how the District treated them less than favorably because of their national origin. They fail to allege how the District is "acting at the direction of and consistent with" these policies. Most significantly, they fail to provide any fact-based allegations as to how this alleged intentional discrimination injured or impacted them. Plaintiffs simply allege that the District's "intentional discrimination against the Plaintiffs their rights directly and proximately resulted in damage to the Plaintiffs." *See* Dkt. 30, ¶199. The allegations within Count VIII are threadbare and conclusory. They do not support a plausible cause of action. Count VIII must be dismissed under FRCP 12(b)(6).

4. Count IX: Intentional Discrimination under Title VI.

Within Count IX, Plaintiffs bring another Title VI Intentional Discrimination claim; however, here they allege Plaintiffs were discriminated against pursuant to Section 504 of the Rehabilitation Act and Title II of the Americans with Disabilities Act. *See* Dkt. #30, ¶¶200-210. Notably, up until this final count, Plaintiffs' Complaint has been silent as to the disabilities of Plaintiffs L.H. and Noa, alleging only that the retaliation Plaintiffs faced was due to Dorit's protected activity. *See* Dkt. # 30, ¶¶115, 152. The District would be remiss not to acknowledge that Count IX was not included in Plaintiff's original Complaint (Dkt. 1) but was most likely added to this operative Complaint due to the District highlighting that the only alleged protected activity is the activity of Dorit Helmer, who does not have standing to bring Title VI claims, or any claims asserted within this Complaint as is further detailed in the following section. However, regardless of the motivation for the inclusion of this additional claim, Count IX must be dismissed as Plaintiffs have failed to state a claim upon which relief can be granted.

Courts have held that to sufficiently state a Section 504 claim, a plaintiff must establish four elements: (1) plaintiff is an individual with a disability under the Act, (2), plaintiff is otherwise qualified for the benefit sought, (3) plaintiff was discriminated against solely by reason of his disability, and (4) the program or activity in question receives federal financial assistance. *Id*. at 119. As to the third element of a Section 504 claim, it further requires Plaintiffs to demonstrate that: (1) the student in question has a disability; (2) the student is otherwise qualified for the benefit in question; and (3) the student was excluded from the benefit because of discrimination based solely on disability. *Williams v. Wasserman*, 937 F. Supp. 524, 528 (D. Maryland 1996). Here, aside from the threadbare conclusory allegations that L.H. and Noa have documented disabilities and that they have IEPs, there are no other facts alleged or exhibits attached to the Complaint documenting that LH and Noa are qualified individuals with disabilities under Section 504 or Title II. There are no allegations whatsoever providing the specific disability of either Plaintiff. Accordingly, Plaintiffs have failed to sufficiently allege the first cumulative and required element as established above.

Even if this Court finds that Plaintiffs' threadbare allegations are sufficient to establish that L.H. and Noa are individuals with disabilities under Section 504 and Title II, Plaintiffs have utterly failed to allege any nonconclusory allegations, or any allegations whatsoever establishing the third required element – that L.H. and Noa were denied the benefits and services required under their IEP and 504 Plans because of discrimination based solely on their disabilities. To establish the third prong of discrimination under Section 504, discrimination solely on the basis of disability, Plaintiffs must show that the Defendants either "(1) intentionally acted on the basis of disability, (2) refused to provide a reasonable modification to permit access to the program, or (3) enforced rules that disproportionally impacted disabled people." *Thurmon v. Mount Carmel High Sch.*, 191

18

F. Supp. 3d 894, 898 (N.D. Ill. 2016). Here, although Plaintiffs generally allege that the District "excluded Plaintiffs from participation in, denied them the benefits of, and/or subjected them to discrimination in educational programs and activities, by reason of their disability", they fail to provide any facts that amount to anything greater than conclusory allegations or sufficiently raise a right to relief above a speculative level, as is required to survive a motion to dismiss. *Twombly*, 550 U.S. at 555. Plaintiffs are silent as to what discrimination Plaintiffs specifically faced, as well as any facts that illustrate that such discrimination was due to their disabilities. Accordingly, Count IX of Plaintiffs' Complaint must be dismissed pursuant to FRCP 12(b)(6).

**E. Plaintiff fails to sufficiently state a claim upon which relief can be granted as to any and all claims made by Dorit Helmer in an individual capacity.**

Throughout Plaintiffs' Complaint, each Count seems to be alleged on behalf of all Plaintiffs as there is no designation as to which Count applies to which Plaintiff: Noa, L.H., or Dorit. Notably, Dorit is a Plaintiff in her individual capacity and as the next friend of L.H. *See* Dkt. 30. Like Plaintiffs Noa and L.H., an entire subsection of the factual background of the Complaint is devoted to Dorit Helmer. *See* Dkt. 30, ¶78-100. The inclusion of Dorit Helmer as an individual Plaintiff is purposeful, as she is the only link to the alleged First Amendment Protected Activity that resulted in the alleged Title VI retaliation against the Plaintiffs. *See* Dkt. 30, ¶¶ 115-154.

Significantly, Dorit in her individual capacity, and not as the next friend of L.H., is not a party to the claims within the Complaint, nor does she have standing to bring such claims. She is not a student or child seeking an education, much less a homeless child under the scope of the McKinney Vento Act. Further, she does not have standing to bring a claim for violation of Title VI against the District. Dorit is not currently and has never been engaged or enrolled in any District programs and thus does not receive the benefit of a program or activity receiving federal funding, as outlined as a requirement to bring a Title VI claim under 42 U.S.C. § 2000d. In light of the

19

general requirements for standing to bring a violation of the McKinney Vento Act and a Title VI claim, the Court should dismiss all claims relating to Dorit in an individual capacity under FRCP 12(b)(6) due to lack of statutory standing and failure to properly state a claim for which relief can be granted.

**F. Counts II and IV must be dismissed with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6) as they are time barred by Section 8-101 of the Tort Immunity Act.**

Counts II and IV must be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) as they are time barred under the Illinois Local Governmental and Governmental Employees Tort Immunity Act (hereinafter "Tort Immunity Act"). A motion to dismiss on statute of limitations grounds qualifies as a motion to dismiss for failure to state a claim. *Ennenga v. Starns*, 677 F.3d 766, 773 (7th Cir. 2012), citing *Small v. Chao*, 398 F.3d 894, 898 (7th Cir. 2005) ("A district court may dismiss under Rule 12(b)(6) something that is indisputably time-barred…"). The *Erie* doctrine "calls on federal courts applying state law to use state substantive law and federal procedural rules." *Sumrall v. LeSEA, Inc.*, 104 F.4th 622, 629 (7th Cir. 2024) (citing *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398 (2010)). "The doctrine though typically applied in diversity cases applies equally to state law claims arising through supplemental jurisdiction." *Id.* (quotation omitted and cleaned up). Accordingly, the state law claims will be assessed under the federal pleading standards. Fed. R. Civ. P. 8(a).

Section 8-101 of the Illinois Local Governmental and Governmental Employees Tort Immunity Act (hereinafter "Tort Immunity Act") establishes a one-year statute of limitations period for actions filed against local public entities. 745 ILCS 10/8-101 (West 2024). A local public entity includes a school district or a school board. 745 ILCS 10/1-206 (West 2024). Therefore, any claim brought against the District after the one-year limitations period is time

20

barred. Here, Plaintiffs allege that the District unlawfully issued Noa's and L.H.'s parents a Notice of Non-Residency on November 13, 2023, and that Noa and L.H. were forcibly withdrawn from the District on November 21, 2023. *See* Dkt. 30, ¶¶ 21, 43, 59, 72. Plaintiffs' original Complaint was not filed until November 13, 2025, roughly two years after the date of the District's alleged violations. Accordingly, Counts II and IV are barred by the one-year limitations provided within the Tort Immunity Act and must be dismissed with prejudice under Federal Rule of Civil Procedure 12(b)(6).

## CONCLUSION

WHEREFORE, Defendant, BOARD OF EDUCATION OF NILES TOWNSHIP DISTRICT 219, respectfully requests that this Honorable Court dismiss Plaintiffs' Amended Complaint in its entirety, with prejudice, and grant Defendants such other relief as this Court deems appropriate.

Respectfully submitted,

BOARD OF EDUCATION OF NILES TOWNSHIP HIGH SCHOOL DISTRICT 219

By:  /s/ Nikoleta Lamprinakos
     One of its Attorneys

Nikoleta Lamprinakos (6274018)
Aidan C. Falk (6342072)
ROBBINS SCHWARTZ, LTD.
190 S. LaSalle St., Suite 2550
Chicago, IL 60603
Phone: 312.332.7760
nlamprinakos@robbins-schwartz.com
afalk@robbins-schwartz.com

21

## **PROOF OF SERVICE**

I, Nikoleta Lamprinakos, an attorney, certify that the foregoing *Defendant's Memorandum of Law in Support of its Motion to Dismiss Plaintiff's Complaint* was electronically filed with the Clerk of the Court using the CM/ECF system on this 24th day of April, 2026, which constitutes service on all counsel of record, registered filing users, pursuant to Fed. R. Civ. P. 5(b)(2)(D).

/s/ Nikoleta Lamprinakos

22