**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| NOA HELMER; DORIT HELMER, Individually and as Parent and Next Friend of L.H., a minor<br><br>Plaintiffs,<br><br>v.<br><br>BOARD OF EDUCATION OF NILES TOWNSHIP HIGH SCHOOL DISTRICT 219,<br><br>Defendant. | No. 25 CV 13954<br><br>Judge Georgia N. Alexakis |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs Noa Helmer, Dorit Helmer, and L.H. allege that defendant Board of Education of Niles Township High School District 219 (the "District") made a false determination of the residency of Noa Helmer and L.H. and otherwise discriminated against plaintiffs in violation of their civil rights. They bring this action under 42 U.S.C. § 1983, Title VI of the Civil Rights Act of 1964, the Illinois Education for Homeless Children Act, and the Illinois Civil Rights Act of 2003. The District has moved to dismiss plaintiffs' complaint in its entirety. [35]. For the following reasons, the Court grants its motion.

## I. Legal Standards

A complaint must contain "a short and plain statement" showing that the plaintiff is entitled to relief. Fed. R. Civ. P. 8(a)(2). A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. *See* Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). To survive a

Rule 12(b)(6) motion, the complaint must allege facts sufficient to state a facially plausible claim. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible if the complaint's "factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

At this stage, the Court assumes that the facts alleged in the complaint are true and draws all reasonable inferences from those facts in the plaintiffs' favor, as it does in the background section that follows. *See Tobey v. Chibucos*, 890 F.3d 634, 645 (7th Cir. 2018). But "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *See Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

## II. Background

On November 24, 2021, the family home of Dorit Helmer, Noa Helmer, and L.H. was destroyed in a fire. [30] ¶ 21. The home was located within the boundaries of Niles Township High School District 219, and at the time, Noa was a student at Niles North High School. *Id.* ¶¶ 19–20. After their home was destroyed, plaintiffs lived in hotels and other temporary accommodations until mid-December 2021, when plaintiffs moved into a temporary residence outside the District's geographical boundaries. *Id.* ¶ 25. Despite this location, throughout the 2021–2022 and 2022–2023 school years and into the 2023–2024 school year, Noa remained registered at and attended Niles North. *Id.* ¶ 38. During this period, L.H. also began to attend Niles North, attending during the 2022–2023 school year and into the 2023–2024 school

year. *Id.* ¶ 67. According to plaintiffs, the District contemporaneously had "full awareness" of their family's displacement. *Id.* ¶ 38.

On November 13, 2023, the District issued Dorit a "notice of residency violation" that stated Noa and L.H. were no longer entitled to attend Niles North because they did not reside within the proper boundaries. *Id.* ¶¶ 43, 72. The notice stated that plaintiffs had ten days to challenge the District's determination of non-residency. *Id.* ¶ 106; [30-2]. Dorit initiated contact with a District official, but plaintiffs did not otherwise take any of the prescribed steps to appeal the determination outlined in the Notice. [30] ¶¶ 106–14; [30-2]. In plaintiffs' view, based on Dorit's communications with the District official, an appeal of the District's determination of non-residency was unavailable or futile, or has been exhausted. [30] ¶¶ 106–14. Noa and L.H. later withdrew from Niles North. *Id.* ¶¶ 45–48, 74–75; [30-5].

Plaintiffs allege that the District's determination of non-residency—made after Noa and L.H. had attended Niles North for around two years while living outside of school boundaries—was made to retaliate against Dorit's "First Amendment advocacy" concerning the Israel-Hamas armed conflict that escalated on October 7, 2023. *Id.* ¶ 115; *see also id.* ¶¶ 116–21. In particular, plaintiffs allege that on October 10, 2023, they became aware of a "pro-war military procession" that was organized at Niles North by a group known as Students for Justice in Palestine. *Id.* ¶ 122. In plaintiffs' view, this "military procession was organized by the District … to further" the policies of "the government of Arab Palestine" and "promote [that government's]

war aims through ethnic intimidation, religious hate, and physical hate." *Id.* ¶ 123.[1] According to plaintiffs, "the military procession kicked off the [District's] coordination of the [Arab Palestinian] government's ongoing pro-war campaign at Niles North." *Id.* ¶ 124. In mid-October 2023, Dorit communicated multiple times with the District's superintendent to express her concerns about "physical intimidation, ethnic hostility, and religious hate by staff, administrators, and students" of Niles North directed toward "those who dissented from [Arab Palestinian] government policy." *Id.* ¶ 132.

On November 9, 2023, an attorney representing multiple families sent a formal letter to the District outlining "how the policies and values of [the Arab Palestinian] government promoted by the District, the Board, the Schools, its administrators, its staff and some of its students, were in violation of students' rights under United States and Illinois law." *Id.* ¶ 142. Dorit was courtesy copied on that letter, which plaintiffs allege "put the District on formal notice of her association with First Amendment-protected advocacy." *Id.* ¶ 143. Four days after this letter was sent, the District issued its notice of non-residency as to Noa and L.H. *Id.* ¶ 144.

Plaintiffs filed suit against the District in November 2025, [1], and in response to a motion to dismiss from the District, a first amended complaint in March 2026, [30]. In their amended complaint, plaintiffs bring claims under § 1983 based on the

[1] The Court uses plaintiffs' own words when describing "the government" that features in their complaint. *See* [30] ¶ 120, n.1 ("In this First Amended Complaint the government of Arab Palestine is referred to as the 'government.' The retaliation and discrimination alleged in this First Amended Complaint were committed in the name of, on behalf of, and as formal agents of the government.").

District's alleged violation of plaintiffs' rights under the McKinney-Vento Homeless Assistance Act, 42 U.S.C. § 11431 (Count I), to procedural due process (Count V), and under the Fourteenth Amendment's Equal Protection Clause (Count VI). Plaintiffs also bring claims under Title VI based on a hostile educational environment (Count III), retaliation (Count VII), national-origin-based discrimination (Count VIII), and disability-based discrimination (Count IX). Finally, plaintiffs bring state-law claims under the Illinois Education for Homeless Children Act (Count II) and the Illinois Civil Rights Act of 2003 (Count IV).

All nine counts are as to all three plaintiffs: Noa, L.H., and Dorit, who sues the District both individually and as L.H.'s parent and next friend. The District has moved to dismiss all nine claims, as brought by all three plaintiffs. [35].

## III. Analysis

### A. Claims Brought by Dorit Helmer Individually

The District asks the Court to dismiss all claims brought by Dorit in her individual capacity. The District points out that Dorit is not a student, or a child seeking an education, or a homeless child. [37] at 12, 15, 17, 19–20. As a result, the District maintains, she cannot bring claims individually under Title VI or the McKinney-Vento Homeless Assistance Act, nor can she seek to enforce her procedural due process rights or her rights under the Equal Protection Clause. *Id.* at 19–20.

Plaintiffs do not respond to any of these arguments. *See generally* [39]. "[A] district court may hold a claim forfeited if a plaintiff fails to respond to the substance of the defendant's motion to dismiss." *Boogaard v. Nat. Hockey League*, 891 F.3d 289,

295 (7th Cir. 2018). The Court therefore dismisses all claims brought by Dorit in her individual capacity. The rest of this opinion assesses the legal sufficiency of the claims brought by Noa and L.H., through Dorit.

**B. Section 1983 Claims**

Plaintiffs bring three claims against the District under § 1983. The Court addresses each of these claims next. As a preface to that discussion, though, the Court notes that for a claim under § 1983 to stand against a governmental entity, like the District, plaintiffs must allege that action pursuant to official governmental policy caused the relevant injury. *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (citing *Monell v. Dept. of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 691 (1978)). The relevant policy may be an express policy, an established practice "that is so permanent and well settled as to constitute a custom or usage with the force of law," or a decision by "person with final policymaking authority." *Palka v. City of Chicago*, 662 F.3d 428, 434 (7th Cir. 2011) (cleaned up).

**1. McKinney-Vento Homeless Assistance Act (Count I)**

Plaintiffs claim that the District allegedly violated their rights under McKinney-Vento Homeless Assistance Act to remain in their school of origin as homeless children. 42 U.S.C. § 11431; [30] ¶¶ 155–62. The parties spend much time disputing whether Noa and L.H. are "homeless" for purposes of the statute, and therefore, whether Count I has legs. But the Court does not need to reach this issue, as the District also argues that Count I should be dismissed because plaintiffs failed

to plead a governmental policy related to the deprivation of rights under the McKinney-Vento statute. [37] at 10–11.

As the Court explains in its later analysis of plaintiffs' Equal Protection Clause claim, the only governmental policies that appear in the complaint are not policies of the District, but rather policies of "the government of Arab Palestine." *See also* [30] ¶ 120, n.1. And even those policies, as alleged, have nothing to do with the deprivation of homeless children's rights. Count I is therefore dismissed.

### 2. Procedural Due Process (Count V)

Plaintiffs next claim that the District violated their rights to procedural due process when it "provided no notice and opportunity to be heard before unenrolling the Plaintiffs." [30] ¶ 181. Here, too, plaintiffs' amended complaint fails to allege any District policy that caused this deprivation.

Perhaps recognizing this deficiency in their allegations, plaintiffs attach an affidavit from Dorit to their memorandum opposing the District's motion to dismiss. [39-1]. In the affidavit, Dorit asserts that a District official "strongly deterred [her] from filing an appeal" from the notice of non-residency; told her "that even though such an option was stated in the letter, no one in his entire career … had ever filed an appeal"; and added: "No one really does this. It's more of just a standard formality paperwork that's mailed with the notice you received." *Id.* ¶¶ 16–17. According to plaintiffs, these additional facts make clear that "it was the pattern and practice of

the [District] to not have a working process to appeal the wrongful removal of homeless children." [39] at 6.

A court may consider information set forth by a plaintiff in a brief opposing a motion to dismiss so long as the information is consistent with the allegations in the complaint. *Smith v. Dart*, 803 F.3d 304, 311 (7th Cir. 2015). However, a plaintiff may not amend a complaint through briefs or accompanying materials. *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 448 (7th Cir. 2011). The assertions in Dorit's affidavit relevant to the issue of a governmental policy are not consistent with the complaint and the exhibits attached to it. *See Esco v. City of Chicago*, 107 F.4th 673, 678 (7th Cir. 2024) (although extrinsic documents may not usually be considered in evaluating the sufficiency of a complaint under Rule 12(b)(6), courts "may examine exhibits ... attached to the complaint, or referenced in the pleading if they are central to the claim"). Nothing in the amended complaint or the attached exhibits sufficiently supports an allegation that the administrative appeal process was available solely in theory, and not in practice. Instead, Dorit's attached communications with the District official reflect only the District official telling Dorit that her children's "continued enrollment at D219 will not be possible"; that he will "review[] the legality of [her] request" that her children be permitted to finish the semester; and that he "was unable to help with [Dorit's] request" that her children's grades be submitted before their withdrawal. [30-5].

To be sure, in the amended complaint itself, plaintiffs allege that "[w]hat is clear from the documentary record and further information in the possession of the

Defendant" is that "an administrative appeal was not available." [30] ¶ 113. But that allegation is conclusory, so the Court cannot credit it. *See Iqbal*, 556 U.S. at 678 (a court need not credit a complaint's legal conclusions or "threadbare recitals" supported by "mere conclusory statements"); *id.* (plaintiff must allege sufficient "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged"). Even if the Court were to credit the allegation, it only supports an inference that an administrative appeal was not available to plaintiffs—not that an express District policy or established practice deprived students of notice and an opportunity to be heard before they were unenrolled as non-residents.

For these reasons, the Court declines to consider the allegations in the response brief and affidavit as to any such District policy and therefore concludes that the allegations in the amended complaint are insufficient to state a claim against the District for the violation of plaintiffs' procedural due process rights. Count V is therefore dismissed.

**3. Equal Protection (Count VI)**

Plaintiffs' third and final claim of liability under § 1983 is that the District allegedly violated their rights under the Equal Protection Clause by treating them differently "because of their heritage and nationality ties to Palestine and its neighbors, while not identifying as 'Arab', their Ashkenazi Jewish ethnic ancestry, and because of their religious objections to and dissent from the Arab nationalist

political project." [30] ¶ 185. Unlike their other § 1983 claims, plaintiffs do point to a policy which motivated this harm. They allege that the District

> acted at the direction of and consistent with the policies of the government. The policies of the government are to intentionally discriminate against those with heritage and nationality ties to Palestine and its neighbors, while not identifying as 'Arab'; those who have Ashkenazi Jewish heritage; and those who have religious objections or who otherwise dissent from the Arab nationalist political project as defined by the government.

[30] ¶ 186; *see also id.* ¶¶ 119–20, 120 n.1, 123–29, 136–37, 139, 142, 171–72, 176, 186, 197.

But as the Court referenced above, the governmental policies at issue are not policies of the District, but rather policies of "the government of Arab Palestine." [30] ¶ 120 n.1. Yet plaintiffs have sued the District, so they must allege that the District's policies—not the policies of some other governmental entity—have caused their constitutional injury. *Thomas v. Cook Cnty Sheriff's Dept.*, 604 F.3d 293, 306 (7th Cir. 2010) ("A governmental body's policies must be the *moving* force behind the constitutional violation before we can impose liability under *Monell*.").

Moreover, to the extent plaintiffs' theory of liability as to the District is premised on the notion that the District co-opted the policies of the Arab Palestine government as the District's own, there is no "factual content" in the complaint that permits the Court to draw such a reasonable inference. *See Iqbal*, 556 U.S. at 678. Instead, the complaint simply asserts, in conclusory fashion, that the District acted "in coordination with" the government of Arab Palestine, "promote[d] its war aims," "promoted [Arab Palestinian] government policy through physical intimidation,

ethnic hostility, and religious hate," and "encouraged the government [of Arab Palestine] and those acting on its behalf to engage in a series of bomb threats through student school group chats against dissenters." [30] ¶¶ 123–27; *see also id.* ¶ 128 (alleging that "in accordance with formal policy, the Defendant did not enforce staff and student codes against those acting on behalf of the government"); *id.* ¶ 129 (alleging that "the Defendant promoted, endorsed, and facilitated a number of physical assaults against dissenters by those acting on behalf of the [Arab Palestinian] government"); *id.* ¶ 186 ("The [District's] staff, administrators (and students acting with the encouragement of the [District]) acted at the direction of and consistent with the policies of the government.").

Without further factual contentions—based on evidentiary support that the plaintiffs already have or "will likely have … after a reasonable opportunity for further investigation or discovery," Fed. R. Civ. P. 11(b)(3)—the Court cannot credit as plausible the claim that a Chicago-area high school has become an agent of a foreign government and facilitated acts of violence against its own student body. *See Miao v. United Airlines, Inc.*, 164 F.4th 622, 624 (7th Cir. 2026) (to withstand dismissal, "[s]peculative allegations, standing on their own, are not enough"). Plaintiffs insist that discovery will substantiate their claims, [39] at 7, but "the doors

of discovery" do not unlock for plaintiffs "armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678–79. Count VI is therefore dismissed.

### C. Title VI Claims (Counts III, VII, VIII, and IX)

Plaintiffs have not responded to any of the District's lengthy and specific arguments concerning the insufficiencies of the Title VI claims, [37] at 11–19, stating only that the actions described in their First Amended Complaint "more than adequately allege[] the basis for the Title VI claims." [39] at 8. The District contends that this failure to respond renders their Title VI claims forfeited. [40] at 9. The Court agrees. *Boogaard*, 891 F.3d at 295. Counts III, VII, VIII, and IX are therefore dismissed.

### D. State-Law Claims

The Court has dismissed all claims in this action which arise under federal law. The only claims that remain are Counts II and IV, which arise under Illinois state law. [30] ¶¶ 163–67, 174–77. Once all federal law claims in a case are dismissed, the district court has discretion to decline to exercise supplemental jurisdiction over the remaining state law claims. 28 U.S.C. § 1367; *Mogan v. City of Chicago*, 115 F.4th 841, 849 (7th Cir. 2024). The Court exercises its discretion in that regard here.

### E. Leave To Amend

Plaintiffs are given leave to amend their complaint so long as any amendments are consistent with their obligations under Rule 11. *See Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510, 519–20 (7th Cir. 2015) ("Unless it is certain from the face of the complaint that any amendment would be futile or otherwise unwarranted, the district court should grant leave to amend after granting

a motion to dismiss."). Under Rule 11, "a party may not present the Court with any pleading, motion, or other paper that contains … a factual assertion that lacks evidentiary support" or a legal contention not warranted by existing law. *Tatum v. Lucas*, No. 11-C-1131, 2021 WL 824340 at *2 (E.D. Wis. Mar. 4, 2021). "The very point of Rule 11 is to lend incentive for litigants to stop, think and investigate more carefully before serving and filing papers." *Royce v. Michael R. Needle P.C.*, 950 F.3d 939, 958 (7th Cir. 2020) (internal quotation omitted).

The Court highlights this obligation for the reasons already set forth in this opinion. It does so as well because, while preparing this opinion, it found a dearth of case law in this judicial district supporting a parent's ability to bring Title VI claims individually. *See Doe v. Woodridge Elementary Sch. Dist. No. 68 Bd. Of Educ.*, No 04 C 8250, 2005 WL 910732, at *2 (N.D. Ill. Apr. 13, 2005) (finding that the plaintiff mother "personally lacks standing to assert a claim for damages against the Defendants, but may bring an action on behalf of her minor son"); *cf. Simpson v. Reynolds Metals Co., Inc.*, 629 F.2d 1226, 1235 (7th Cir. 1980) (finding that a plaintiff must be an intended beneficiary of, an applicant for, or a participant in a federally funded program in order to state a claim under Title VI). Although the Court did not need to address this question to resolve the District's motion, it asks plaintiffs to consider carefully this case law before proceeding with another amended complaint.

## IV. Conclusion

For the foregoing reasons, the District's motion to dismiss [35] is granted and plaintiffs' first amended complaint [30] is dismissed without prejudice. Any second

amended complaint must be filed by October 22, 2026. A failure to file a second amended complaint by that deadline will result in dismissal of all federal claims with prejudice and the relinquishment of the Court's supplemental jurisdiction over the remaining state-law claims.

ENTER:

Georgia N. Alexakis
United States District Judge

Date: 10/1/2026